David E. **EICHAKER**, Plaintiff–Appellant,

v.

**VILLAGE OF VICKSBURG,**
Defendant–Appellee.

No. 15–1128.

United States Court of Appeals,
Sixth Circuit.

Oct. 5, 2015.

Before: GUY, KETHLEDGE, and STRANCH, Circuit Judges.

KETHLEDGE, Circuit Judge.

David Eichaker worked as a police officer for the Village of Vicksburg while also serving in the military. Eichaker sued the Village under the Uniformed Services Employment and Reemployment Rights Act (the "Act"), claiming that the Village had discriminated against him in various ways because of his military affiliation. The district court granted summary judgment to the Village on all of Eichaker's claims. We reverse and remand.

I.

We recite the facts in the light most favorable to Eichaker. *See Scott v. Harris,* 550 U.S. 372, 378, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). In 1999, the Village hired Eichaker as a police officer. At the time, Eichaker served in the Marine Corps Reserves, though he switched to the Air National Guard two years later. Eichaker typically spent one weekend per month and an additional two weeks engaged in military duty each year. On occasion, however, he took additional, longer leaves of absence for military service or training.

After September 11, 2001, for example, Eichaker spent 14 months on active duty with the military and on leave from the police department.

Eichaker was not the only member of the department to take leave for months at a time. In January 2003, soon after Eichaker returned from his 14–month activation, Village Police Chief Mike Descheneau took a four-month leave of absence for health reasons. Before Descheneau left, he promoted Eichaker to lieutenant—the only one in the department—and asked Eichaker to take charge until Descheneau returned. Descheneau felt that Eichaker would do a good job running the department because Eichaker had leadership skills and a military background.

Again in 2007, Descheneau took a leave of absence, this time to work as a contractor in Afghanistan. Again he left Eichaker in charge. Descheneau could not remember "any serious criticisms" of Eichaker's performance as acting Chief and believed that Eichaker did an "okay job." When Descheneau returned from Afghanistan, however, Village Manager Matthew Crawford—Descheneau's immediate boss—said that he was "not happy" with Eichaker. Crawford never told Descheneau why.

In July 2009, Eichaker took four months of leave to attend a military-photography school, hoping to change his military specialty from security forces to public affairs. A few months after Eichaker's return, in April 2010, Descheneau said that he planned to retire. When Eichaker approached Crawford about the opening, Crawford put him off, saying "later."

But "later" never came. Instead, Crawford selected another officer in the department, Eric West, to replace Descheneau as Police Chief. Crawford announced his selection in a closed meeting of the Village Council. Although Crawford denies ever

mentioning Eichaker's military career to the Council as a reason for the decision, the Village office manager and a council-member remember the meeting differently. According to Gloria Kiel, the office manager, Crawford suggested that Eichaker was not ready for the job because he had a young family and was focusing on his military career. Council-member Christine Klok got the same comment when she asked Crawford if Eichaker had been interested in the position. Sometime later, newly elected council-member Marc Boyer asked Crawford why Eichaker had been "passed over." Crawford explained that "it would be hard" to have Eichaker as Police Chief if he were "called away for duty" or "deployed."

Crawford gave different reasons a few months later, when Eichaker himself demanded an explanation: In short, Crawford explained, West "was the right kind of asshole and [Eichaker] wasn't." So Eichaker remained a lieutenant.

But not for long. Shortly before West took over as Chief, he decided to eliminate the lieutenant position and demote Eichaker to sergeant—a rank that required membership in the police union. Within seconds of explaining his decision to Eichaker, West said, "[y]ou think you can go on military leave whenever you feel like it." The demotion meant more to Eichaker than lost rank. It also meant that he would have to pay union dues and higher health-insurance premiums while receiving smaller bonuses; and that, when Eichaker was on military leave, the department would no longer cover the difference between his military pay and his department pay.

West's comment about military leave reminded Eichaker of another comment that West had made years earlier, when West complained that union employees had to fill in for Eichaker every time he went on

military leave. Six weeks after West demoted him, Eichaker told West that he might report the situation to a military office that mediates disputes between employers and reservist employees. In response, West yelled "Are you threatening me?" before storming out of the office and slamming the door. That same afternoon, West returned to the office, said that he no longer trusted Eichaker, and demanded that Eichaker hand over the key to the Chief's office.

As a result of Eichaker's "personal attacks"—including the possibility of contacting military mediators—West started thinking about again demoting Eichaker, this time from sergeant to patrolman. In his deposition, West explained why: Eichaker "was a sergeant. I had to eliminate that sergeant's position. I had to eliminate him from that position. Basically, I could not trust him anymore." But West decided that a counseling memo "should suffice" for the time being.

About six months after the office confrontation, however, West demoted Eichaker to patrolman and assigned him to the midnight shift. West wrote a letter explaining that Eichaker "forced" the demotion by, as West described it, repeatedly trying to "discredit" West with "personal attacks"; behaving unprofessionally and disrespectfully; frequently raising concerns about pay, seniority, insurance premiums, union dues, and the department structure and rules; bad mouthing the department; leaving early without permission on one occasion; lacking attention to detail; and violating general orders.

Eichaker's trouble in the department did not end with his demotion to patrolman. In the spring of 2011, Eichaker went on leave for four months to fill in for a military superior on parental leave. Soon after Eichaker's return, a Village resident died in Afghanistan and the department

provided a police escort for the funeral procession. West excluded Eichaker from the police escort, and instead asked other police officers to come in on their day off—officers who had not served in the military and who lived 30 miles away from town. (Eichaker lives only four miles from town.) Eichaker says that he lost pay when West excluded him from the funeral detail. West told Darin Stanfill, another officer in the department, that excluding Eichaker from the detail "was just an oversight." But West testified in his deposition that he excluded Eichaker "[b]ecause [Eichaker] was a disgruntled employee" and West did not want Eichaker to "cause a problem at the parade or [the funeral] procession."

In November 2011, Eichaker took another military leave of absence, this time for a six-month deployment to Afghanistan. On previous deployments, the police department had continued Eichaker's health insurance without charge. On this deployment, however, the department billed him for the continued coverage. West explained to Kiel (the office manager) that "[w]e're not gonna violate any . . . laws or whatever. But nothing says we have to pay for it." So Eichaker had to choose: "[I]f he did not want to use his leave hours to cover [the insurance], he would be paying for it."

In February 2012, while still in Afghanistan, Eichaker filed a complaint with military mediators, alleging that the police department had violated the Act. A month later, Eichaker filed a similar complaint with the Department of Labor. Eichaker returned from Afghanistan in July, but did not return to work. Instead, in October, Eichaker requested a discretionary, non-military leave of absence that would start on November 1 and continue until his complaints were resolved. Crawford denied the request, citing "staffing needs" and the police union's collective-bargaining agree-

ment. Crawford explained that Eichaker could still take another military leave of absence—but only if he produced military orders. At that point, Eichaker resigned.

Eichaker thereafter sued the Village for violating the Act by refusing to promote him, twice demoting him, excluding him from a detail for a military funeral, and billing him for health insurance while he was deployed. The district court granted summary judgment to the Village on all of Eichaker's claims. This appeal followed.

## II.

We review de novo the district court's grant of summary judgment, viewing the evidence in the light most favorable to Eichaker. *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th Cir.2014). Summary judgment is proper only when the record shows that there is no genuine issue as to any material fact. *Ondo v. City of Cleveland*, 795 F.3d 597, 603 (6th Cir. 2015). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir.2004).

The burden-shifting regime for the Act differs from the regime for some other federal statutes. To prevail on a discrimination or retaliation claim under the Act, a plaintiff must prove that either his military service or his "action to enforce" a right protected by the Act was a "motivating factor" in an adverse employment decision. 38 U.S.C. § 4311(c)(1), (c)(2). The burden then shifts to the employer to prove that it would have taken the same action "in the absence of" the employee's military service or protected action. *Id.* § 4311(c)(1), (c)(2).

### A.

### 1.

Eichaker first challenges the district court's holding that Eichaker's mili-

tary service was not a motivating factor in Crawford's decision to promote West instead of Eichaker. He points to testimony from three witnesses in particular. Office Manager Kiel testified that Village Manager Crawford told her that he did not consider Eichaker because he had "young kids" and was "focusing on his military career." Council-member Klok testified that Crawford told her that Eichaker "had a young family and a military career he was pursuing." And Council-member Boyer testified that Crawford told him that he did not select Eichaker because "it would be hard to have a Police Chief if he was called away for [military] duty, or . . . deployed."

All of this testimony—which the district court appeared to overlook in granting summary judgment—was relevant to Eichaker's claim. An employer's concern that an employee is taking too much time off for military service is direct evidence of anti-military animus. *Hance v. Norfolk S. Ry. Co.*, 571 F.3d 511, 518 (6th Cir.2009) (per curiam). So too is a supervisor's statement that he does not want an employee volunteering for extra military duty when needed at work. *Bobo v. United Parcel Serv., Inc.*, 665 F.3d 741, 755 (6th Cir.2012). This is true even when the comments are made at a time or by a person removed from the adverse employment decision. *Id.* But there is no such remoteness here: Crawford explained his decision to demote Eichaker by referencing Eichaker's military leaves of absence. That is direct evidence of anti-military animus. Thus, Eichaker presented evidence that would allow a reasonable jury to find that his military service was a motivating factor in Crawford's decision to deny him a promotion.

### 2.

■ Eichaker also challenges the district court's conclusion that Crawford

would have promoted West even if Eichaker were not in the military. On this issue, the Village bears the burden of proof. *See* 38 U.S.C. § 4311(c)(1). Thus, Eichaker's claim should survive summary judgment if any reasonable jury could find that Crawford would have promoted him but for his military service. *Id.*

Here, for the reasons just explained, a reasonable jury could make that finding. The district court therefore erred in granting summary judgment on Eichaker's promotion claim.

### B.

■ Eichaker next challenges the district court's holding that his military service was not a motivating factor in his demotion from lieutenant to sergeant. Shortly before Descheneau stepped down as Chief, West told Eichaker that he planned to eliminate the department's only lieutenant position and demote Eichaker to sergeant. The demotion would return Eichaker to the union, which West later said "was best for morale and the operations of the department." The district court found as a matter of law that this motivation did not amount to anti-military animus.

The record as a whole undermines that finding. In the same conversation in which West announced the demotion, he also commented on Eichaker's military leaves of absence: "You think you can go on military leave whenever you feel like it." And given all of the other evidence of anti-military animus in this case (some of it direct, as discussed above), a jury could reasonably find that Eichaker's military service was a motivating factor in his demotion to sergeant.

### C.

■ Eichaker also challenges the district court's holding that Eichaker's mili-

tary service was not a motivating factor in West's decision to demote Eichaker from sergeant to patrolman. Specifically, Eichaker argues that he was demoted to patrolman in retaliation for his threat to report West to military mediators and for his complaints about lost benefits. Under the Act, an employer may not "take any adverse employment action against" a person for "tak[ing] an action to enforce a protection afforded under" the Act. 38 U.S.C. § 4311(b)(1). The Act protects "any benefit of employment," *id.* § 4311(a)(1), and defines "benefit" as including any "advantage," "gain," or "status" under "an employment contract" or "practice," *id.* § 4303(2).

Here, in the letter demoting Eichaker, West asserted that he was disciplining Eichaker for repeatedly trying to "discredit" West with "personal attack[s]." West used the same language six months earlier to explain why he had originally planned to demote Eichaker to patrolman. When asked in his deposition what he meant (in both instances) by "attacks," West explained: "[Eichaker was] going to report me to every council member" and "basically broadcast all my mistakes, all my problems to whoever [sic] he needed to report them to"—including, West admitted, the military mediators. The letter also explained that West was demoting Eichaker because of his prior complaints about benefits—benefits that Eichaker lost as a result of his first demotion. As shown above, a jury could find that the first demotion was itself a violation of the Act. Thus, a jury could find that his complaints about the benefits he lost as a result of that demotion were efforts to enforce the Act. *See id.* § 4311(b)(1). The evidence would therefore allow a reasonable jury to conclude that West demoted Eichaker to patrolman, in part, for complaining about the department's failure to comply with the Act. Thus, the district court erred in

granting summary judgment to the Village on Eichaker's claim that his demotion to patrolman was retaliation under the Act.

### D.

■ Next, Eichaker challenges the district court's holding that the Village did not violate the Act by billing Eichaker for health insurance while he was in Afghanistan. Specifically, the district court reasoned that Eichaker "did not affirmatively request to cancel" the benefits and that nothing in the Act "prohibit[s] an employer from continuing health care coverage and requiring payments for that coverage by a military service member." But the Act does prohibit terminating an employment benefit on the basis of military service or an employee's actions to enforce the Act's protections. 38 U.S.C. § 4311(a), (b)(1). And the Act defines "benefit" as "any advantage" that results from "an employer policy, plan, or practice[.]" *Id.* § 4303(2).

Eichaker's claim therefore raises two questions: First, whether the Village's provision of free health insurance during Eichaker's prior deployments was a "practice" within the meaning of § 4303(2); and second, if so, whether anti-military animus or Eichaker's efforts to invoke the Act's protections were a motivating factor in West's decision to bill Eichaker for health insurance during his deployment to Afghanistan. The district court should address these questions on remand.

### E.

■ Finally, Eichaker argues that the district court failed to address two more of his claims: that his exclusion from the police escort for the military funeral was retaliation under the Act, and that West's treatment of Eichaker amounted to constructive discharge. The latter claim is waived, since Eichaker first argued con-

534

structive discharge in response to the Village's motion for summary judgment. *See City of Columbus, Ohio v. Hotels.com, L.P.*, 693 F.3d 642, 650 (6th Cir.2012). But Eichaker's claim regarding the military detail was pled and was not addressed by the district court. The district court should therefore address this claim on remand.

\* \* \*

The district court's judgment is reversed and the case remanded for further proceedings consistent with this opinion.