RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 09a0224p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
————————————

KELLY W. HANCE,

        *Plaintiff-Appellee,*

    *v.*

NORFOLK SOUTHERN RAILWAY COMPANY,

        *Defendant-Appellant.*

No. 07-5475

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 04-00160—Thomas W. Phillips, District Judge.

Argued: June 5, 2008

Decided and Filed: July 1, 2009

Before: DAUGHTREY, CLAY, and McKEAGUE, Circuit Judges.

————————————

**COUNSEL**

————————————

**ARGUED:** James Stanton Whitehead, SIDLEY AUSTIN LLP, Chicago, Illinois, for Appellant. K. Cody Allison, TILLER ALLISON, Nashville, Tennessee, for Appellee. **ON BRIEF:** James Stanton Whitehead, SIDLEY AUSTIN LLP, Chicago, Illinois, for Appellant. K. Cody Allison, TILLER ALLISON, Nashville, Tennessee, Phillip Leon Davidson, Nashville, Tennessee, Gregory A. Stayart, Elkhorn, Wisconsin, for Appellee.

————————————

**OPINION**

————————————

PER CURIAM. The defendant, Norfolk Southern Railway Company, appeals the judgment of the district court in favor of plaintiff Kelly Wayne Hance, who prevailed on his claim under the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA), 38 U.S.C. §§ 4301-4333. Hance, a former Norfolk Southern employee and member of the Tennessee Army National Guard, sued Norfolk Southern, claiming that the company discharged him because of his military service. Following a bench trial, the district

1

court rendered judgment for the plaintiff, ordering Norfolk Southern to reinstate Hance to his prior position and awarding him back pay, lost benefits, and interest in the amount of $352,845.93. Norfolk Southern appeals from this judgment, arguing that Hance was discharged for insubordination, that Hance's military service obligations were not a motivating factor in his discharge, and that the district court abused its discretion in awarding and in calculating Hance's damages. Because we conclude that the district court did not err in finding Norfolk Southern liable for discrimination under USERRA, we affirm the district court's determination on liability in Hance's favor. However, because of error in some aspects of the damages award, we reverse the judgment in part and remand the case for further fact-finding and an award of damages consistent with this opinion.

### *FACTUAL AND PROCEDURAL BACKGROUND*

Following the bench trial in this case, the district court set out the facts in detail, as follows:

> Kelly Wayne Hance ("Hance") enlisted in the National Guard in December of 1996 and commenced employment at Norfolk Southern Railway Company ("NSRC") in May of 1999 as a conductor-trainee. Throughout his employment at NSRC during active duty, Hance averaged three to five days a week of work. As an employee conductor of NSRC, Hance's employment was at all times subject to the terms of a Collective Bargaining Agreement ("CBA"), including provisions regarding employee discipline, NSRC's operating rules, and also [to] the Norfolk Southern System Teamwork and Responsibility Training ("START") policies and procedures.

> Sometime in May of 2000, Hance was placed on furlough status in the Knoxville District. In August of 2000, Hance requested and was transferred to the Appalachia District, under the supervision of defendant, O. Rick Webster ("Webster"). Hance was then released from work on the Appalachia District on October 24, 2000, after having been called to duty on several military assignments, for allegedly having an unacceptable work record. Despite the allegations of Hance having an unacceptable work record, Hance was not disciplined by NSRC during this period of time, but rather was placed on furlough status in his home seniority district in Knoxville.

> Plaintiff challenged his release from work by filing a grievance through his United Transportation Union ("UTU") representative, Gary E. Mills ("Mills"). Ultimately, the grievance was denied on grounds that Hance had not been technically disciplined. During the appeal process related to Hance's release from work, Mills was told by defendant Webster that

Webster was upset with Hance because Hance was off too much time from work for military service. The Court found Mills' testimony at trial to be credible. Hance subsequently filed a complaint with the Veterans Employment and Training Service ("VETS"); however, this was ultimately unsuccessful.

Some nine months later, in June of 2001, Hance applied for a second voluntary transfer to the Appalachia District. At the time, Hance was still on furlough. In response, the Appalachia District, the same district that had previously released Hance, approved Hance's transfer, in spite of defendant Webster's concerns. On July 12, 2001, Hance reported to Webster. He arrived with a representative from the military guard, Master Sergeant General Harold Morrison, who communicated to Webster that Hance would be leaving for summer military training scheduled between July 14th and July 29th of 2001. Hance testified that Webster was hostile toward him and continued his aggressive behavior toward Hance throughout the meeting. He further states that Webster refused to accept paperwork related to his military training from MSG Morrison. Additionally, Webster refused to allow MSG Morrison to record the meeting, via audio means, and made MSG Morrison leave the meeting. Webster was irritated by MSG Morrison being present at the meeting. Hance testified that Webster advised that if he was interested in working again on the Appalachia District he needed to travel to Andover, Virginia on July 30, 2001. The travel would be unpaid, and Hance was not guaranteed a work schedule. The Court finds the testimony of Hance credible.

After the meeting, Hance asserts that he contacted James Clark ("Clark"), who was the general chairman of the UTU, to seek clarification regarding Webster's instruction to report on July 30, 2001. According to Hance, Clark told him that he did not have to report on July 30, 2001 and that he could remain on furlough. Hance then stated that he would rather not report to Andover, Virginia on July 30, 2001. In response, Clark told Hance that he would take care of the situation.

On July 30, 2001, Hance did not report to Andover, Virginia. Hance testified that he did not believe that he was required to report on July 30, 2001 and/or notify Webster of changed plans. Further, Hance indicates that he was ineligible to report to duty. In particular, NSRC's policies state that individuals who are returning to duty from a work absence of six months or longer are required to have a complete medical examination. As the record reflects, Hance had been absent from work longer than six months. NSRC contends that, although Hance may not have been eligible to work before a medical examin[ation], he was still required to report.

NSRC conducted an investigation, and NSRC ultimately found that Hance was guilty of a charge of insubordination. Thereafter, Hance was dismissed from service on August 23, 2001. The UTU filed a grievance under the CBA on Hance's behalf challenging his dismissal. After Hance exhausted his internal appeals under the CBA, the grievance was submitted to a Public

Law Board ("PLB") for adjudication.  The PLB found that there was no violation of the CBA and affirmed Hance's dismissal.  Thereafter, Hance filed the subject action in this District Court.

*Hance v. Norfolk Southern Ry. Co.*, No. 3:04-CV-160, slip op. at 1-5 (E.D. Tenn. Mar. 23, 2007).

The district court found that, although Hance's termination was not based on his military service or status alone, his military service was a "motivating factor" in his dismissal.  The court held, therefore, that Hance had established a *prima facie* case of discrimination under USERRA that the defendant had failed to rebut by proof of "a legitimate, nondiscriminatory basis for discharge in which military service was not a motivating factor."  As a result, the district court ordered Hance's reinstatement and awarded him back pay, lost benefits, and interest in the amount of $352,845.93, as well as attorney fees.

## DISCUSSION

In an appeal from a bench trial, we review findings of fact for clear error and conclusions of law *de novo*.  *See Overton Distribs., Inc. v. Heritage Bank*, 340 F.3d 361, 366 (6th Cir. 2003).  "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *United States v. Mabry*, 518 F.3d 442, 449 (6th Cir. 2008) (citing *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).  Awards of money damages are reviewed under an abuse of discretion standard.  *See United States v. City of Warren, Mich.*, 138 F.3d 1083, 1094-97 (6th Cir. 1998).  "A court abuses its discretion when it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard."  *Id.* at 1096.

### A.  *Liability under USERRA*

The Uniformed Services Employment and Reemployment Rights Act was enacted "to prohibit discrimination against persons because of their service in the uniformed services."  *Curby v. Archon*, 216 F.3d 549, 556 (6th Cir. 2000).  USERRA provides, among other things, that "[a] person who is a member of . . . a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of

employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation." 38 U.S.C. § 4311(a). Adverse employment actions are prohibited under USERRA "if the person's . . . obligation for service in the uniformed services is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such . . . obligation for service." 38 U.S.C. § 4311(c)(1).

> In considering the history behind the passage of USERRA, we have observed that:

> > Section 4311 is a congressional response to the Supreme Court's decision in *Monroe v. Standard Oil Co.*, 452 U.S. 549 (1981). In *Monroe*, the Supreme Court held that USERRA's antecedent, the Vietnam Era Veterans' Readjustment Assistance Act of 1974, "was enacted for the significant but limited purpose of protecting the employee-reservist against discriminations like discharge and demotion, motivated *solely by* reserve status." *Id.* at 559 (emphasis added). Congress amended the statute in 1994 to provide that a violation occurs when a person's membership in the uniformed services is a *motivating factor*, even if not the sole factor. Stated otherwise, Congress intended to lessen, but not eliminate, a [plaintiff's] obligation to show that the employer's adverse decision was related to his or her service in the armed forces.

*Curby*, 216 F.3d at 556-57 (internal citations omitted). USERRA thus requires the complaining soldier or veteran to demonstrate only that his or her military service was a motivating factor in an adverse employment action. *See* 38 U.S.C. § 4311(c)(1). Once the plaintiff has discharged this initial burden of establishing a *prima facie* case of discrimination, "the employer then has the opportunity to come forward with evidence to show, by a preponderance of the evidence, that the employer would have taken the adverse action anyway, for a valid reason." *Sheehan v. Dep't of Navy*, 240 F.3d 1009, 1013 (Fed. Cir. 2001) (internal citations omitted).

> The plaintiff may prove the factual question of discriminatory motivation by direct or circumstantial evidence:

> > Discriminatory motivation under the USERRA may be reasonably inferred from a variety of factors, including proximity in time between the employee's military activity and the adverse employment action, inconsistencies between the proffered reason and other actions of the employer, an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity, and

disparate treatment of certain employees compared to other employees with similar work records or offenses.

*Id.* at 1014. Once the employee meets this burden, it "shifts to the employer to prove the affirmative defense that legitimate reasons, standing alone, would have induced the employer to take the same adverse action." *Id.* As the facts found by the district court in this case demonstrate, Hance was able to establish several relevant factors, not the least of which were the expressions of hostility concerning his statutorily-excused absences from work when called to military duty.

On appeal, Norfolk Southern argues that the district court erred in attributing anti-military animus to Norfolk Southern and in concluding that Norfolk Southern failed to prove that a nondiscriminatory reason actually motivated the discharge. Regarding the attribution of anti-military animus to the company, Norfolk Southern argues that Trainmaster O. Rick Webster, Hance's immediate supervisor, lacked the authority to investigate or terminate Hance and, therefore, that Webster's anti-military animus cannot be imputed to the company. But in addition to evidence of Webster's hostile attitude, testimony by union representative G.E. Mills indicated that Assistant Superintendent Bryson had also expressed concern about Hance's taking "too much time off for the miliary." Significantly, Bryson *was* responsible for the decision to dismiss Hance. This evidence of anti-military animus from a decision-maker, combined with the close temporal relationship between Hance's two-week leave for military service and his discharge was legally sufficient to support the district court's finding that Hance was discharged in violation of USERRA. As a result, we conclude that the district court did not err in attributing anti-military animus to Norfolk Southern.

We find equally unavailing Norfolk Southern's contention that the district court erred in concluding that the record fails to reflect a valid, nondiscriminatory basis for Hance's dismissal. The company argues that Hance's failure to report for service in Andover, Virginia, constituted insubordination, an offense for which Hance would have been fired even in the absence of his military service commitments. Norfolk Southern also argues that the district court was bound by the arbitration board's decision that Hance was discharged for just cause.

Federal courts typically accord broad deference to arbitration decisions. *See*, *e.g.*, *Mich. Family Res., Inc. v. Serv. Employees Int'l Union Local 517 M*, 475 F.3d 746, 755 (6th

Cir. 2007) (en banc). However, we have previously recognized as an exception to this rule that district courts are not bound by arbitration decisions in employment discrimination cases under Title VII or 42 U.S.C. § 1981. *See Becton v. Detroit Terminal of Consol. Freightways*, 687 F.2d 140 (6th Cir. 1982). We held in *Becton* that "a federal court may, in the course of trying a Title VII or section 1981 action, reconsider evidence rejected by an arbitrator in previous proceedings." *Id.* at 142. In the context of an employment discrimination case, deference is due to an arbitrator's interpretation of provisions in a collective bargaining agreement or other employment contract, but *Becton* cautions that an arbitrator's decision regarding "just cause" for termination is not equivalent to the inquiry and burden-shifting framework mandated by Congress in an employment discrimination case. *See id.* Hence, a federal court should not consider an arbitrator's decision binding in a discrimination suit, because to do so would "unnecessarily limit[] the plaintiff's opportunity to vindicate his statutory and constitutional rights." *Id.*

In this case, the district court considered the arbitrator's decision, the factual dispute over whether Hance's reporting instructions were clear, and the evidence of anti-military animus by Hance's superiors. Because the district court was not required to consider the arbitrator's determination as conclusive, that determination could not prevent the court from holding – correctly, we conclude – that Norfolk Southern had failed to demonstrate a valid, nondiscriminatory basis for Hance's dismissal, as measured by the standard required under section 4311(c)(1).

### B. *Damages*

Norfolk Southern challenges the damages awarded to Hance on several grounds. Regarding the back-pay award, Norfolk Southern claims that the court erred in assuming that Hance would have been recalled to work at the end of the summer of 2001. The company also argues that the court erred by failing to reduce back pay to offset Hance's part-time National Guard pay in 2004 and by awarding back pay while Hance was employed full-time with the Guard during 2005-06, as well as during the period between the end of Hance's full-time Guard service and the entry of judgment. In addition, Norfolk Southern challenges the damages awarded for lost fringe benefits, arguing that the damages should have been calculated based on the actual costs incurred by Hance in securing substitute benefits instead

of the value of the policy he would have had under Norfolk Southern.  Finally, Norfolk Southern disputes the award of damages for lost retirement benefits, claiming that the award of retirement benefits constitutes an impermissible double recovery.

Remedies provided under USERRA include requiring the employer "to compensate the person for any loss of wages or benefits suffered by reason of such employer's failure to comply with the provisions of this chapter."  38 U.S.C. § 4323(d)(1)(B).  Because we have found no cases regarding damages under USERRA in this circuit, we look to our case law regarding damages available for other types of employment discrimination.  In the Title VII context, we have held that the plaintiff bears the burden of proving damages and is "entitled to the amount claimed unless the defendant can prove otherwise."  *EEOC v. Wilson Metal Casket Co.*, 24 F.3d 836, 841 (6th Cir. 1994)  (internal citations and quotation marks omitted).  To challenge damages on appeal, a defendant employer "must demonstrate that it proved by a preponderance of the evidence that [the plaintiff] was not entitled to [damages]."  *Id.*  We address each of Norfolk Southern's arguments in turn.

Norfolk Southern first argues that Hance has not presented competent evidence that he would have been recalled from furlough by September 1, 2001, the date from which the district court began to calculate his back pay.  However, the record contains the testimony of G.E. Mills, the local union chairman who had advised Hance that he was likely to be called back to work "during the summertime or later in the summer."  Hance testified that James Clark, the union's general chairman, had told him that he could "either go back up there under their terms or remain furloughed in Knoxville, and more than likely you'll be going back to work within the next month or two."

Although "back pay in a Title VII case need not be proven with the exactitude of lost profits in a breach of contract case, neither can such an award be appropriately founded on mere speculation."  *Christopher v. Stouder Mem'l Hosp.*, 936 F.2d 870, 880 (6th Cir. 1991).  But absolute accuracy in the calculation of damages is not necessary either.  "Backpay should be awarded even where the precise amount of the award cannot be determined.  Any ambiguity in what the claimant would have received but for discrimination should be resolved against the discriminating employer."  *Rasimas v. Mich. Dep't of Mental Health*, 714 F.2d 614, 628 (6th Cir. 1983) (internal citations omitted).  Because the district court

based its back-pay award on uncontroverted testimony that Hance was likely to be recalled by the end of the summer, we hold that the district court did not abuse its discretion in calculating Hance's back pay from September 1, 2001.

Norfolk Southern also claims that the court abused its discretion by refusing to offset Hance's back pay for 2004 by the amount of his part-time pay from the National Guard. Hance responds that his earnings should not be offset because, prior to discharge, he had received part-time pay from the Guard in addition to his full-time work for Norfolk Southern. In this regard, he relies on a Fifth Circuit case holding that earnings from a second job are not to be used as an offset in awarding damages for discriminatory discharge from a primary job. *See Bing v. Roadway Express, Inc.*, 485 F.2d 441, 454 (5th Cir. 1973). In that case, the court reasoned that "if one can hold his supplemental job and his desired full time job simultaneously and there is reason to believe he will do so, . . . [t]hose earnings would be independent of the position sought and should not be taken into account in back pay calculations." *Id.* We are persuaded by this logic, because the purpose of a back-pay award in discrimination cases is to "make the claimant whole, that is, to place him in the position he would have been in but for discrimination." *Rasimas*, 714 F.2d at 626. We conclude that the district court did not abuse its discretion by declining to offset Hance's back pay by the amount of his part-time National Guard pay.

Norfolk Southern further contends that the district court erred in granting back pay for the 2005-06 period in the absence of evidence of replacement earnings. Hance testified at trial that he was employed full-time by the National Guard from March 2005 through May 2006 and that he continued to work part-time for the Guard from May 2006 to the time of trial in June 2006. Hance did not provide information about his earnings in 2005-06 during discovery and was unable to provide this information at trial. However, the district court awarded back pay for this time period in the amount of Hance's projected earnings with Norfolk Southern, applying no offsets. Norfolk Southern relies on the opinions of several of our sister circuits as support for its claim that back pay cannot be awarded when a plaintiff does not submit evidence of a loss of earnings or post-discharge wages. *See*, *e.g.*, *Akouri v. State of Fla. Dep't of Transp.*, 408 F. 3d 1338, 1344 (11th Cir. 2005); *Taylor v. Philips Indus., Inc.*, 593 F.2d 783, 787 (7th Cir. 1979); *Harper v. Gen. Grocers Co.*, 590 F.2d 713, 717 (8th Cir. 1979). We find these cases to be inapposite, however, because the plaintiffs

in these cases presented *no* mitigation evidence of post-discharge earnings.  In contrast, Hance presented evidence of his earnings both prior to discharge and from his substitute employment from 2001 to 2004, as well as testimony regarding his full-time work for the National Guard between 2005 and 2006.  Guided by *Rasimas*, we conclude that Hance's testimony was legally sufficient to establish a *prima facie* case on the issue of damages.  The burden would then shift to the employer to show that a back-pay award should be reduced by the amount of interim earnings or that the plaintiff did not exercise due diligence in seeking substitute employment in mitigation of his damages. *See Rasimas*, 714 F.2d at 623-24.

On the other hand, it does appear that the district court should have offset the award of back pay for the 2005-06 period.  Because Hance was working full-time for the Guard during this period, the district court's award provided Hance with damages equivalent to the earnings from two full-time jobs.  Given Hance's rather vague testimony about his income during this period, the record does not establish the amount of damages needed to make him whole.  As a result, we find it necessary to vacate the district court's award of back pay for the 2005-06 period and remand the case for further fact-finding on this issue and entry of a new damage award consistent with this opinion.

Norfolk Southern also challenges the back pay award for the period from the end of Hance's full-time Guard service to the entry of judgment.  The district court awarded full back pay with no offsets during this period, despite the fact that Hance did not provide evidence of his earnings during this time.  Although prevailing plaintiffs in employment discrimination cases are "presumptively entitled to back pay until the date judgment has been entered in the case," *Wilson Metal Casket Co.*, 24 F.3d at 840 (internal citation omitted), back-pay awards should make a plaintiff whole, not better off.  Accordingly, we vacate the district court's award of back pay for this time period and remand for further fact-finding and entry of a damage award consistent with this opinion.

Norfolk Southern's final objections are to the award of damages compensating Hance for lost fringe benefits and Railroad Retirement Tax Act contributions. Regarding the award for lost fringe benefits, Norfolk Southern advances two arguments.  First, the company argues that Hance did not present evidence adequate to allow the district court to

award damages on lost benefits.  We find no merit to this argument, however, because Hance submitted calculations of his lost benefits to the district court, Norfolk Southern did not submit any contradictory calculations regarding lost benefits, and Hance was subject to cross-examination on this issue at trial.

Second, Norfolk Southern argues for the first time on appeal that damages for fringe benefits should be calculated based on actual costs incurred by Hance in securing substitute benefits, not the open-market value of providing those benefits.  Although we are not required to consider an issue raised for the first time on appeal, we may exercise the discretion to do so, *see Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1461 (6th Cir. 1988), and for purposes of judicial economy, we opt to do so here.

In *Wilson Metal Casket*, we approved an award of damages for lost medical benefits by a successful Title VII plaintiff based on medical expenses actually incurred that would have been covered by the company's medical plan.[1]  *See* 24 F.3d at 841.  Although we recognize that a circuit split has developed regarding the issue of how to calculate such benefits, *see Tolan v. Levi Strauss & Co.*, 867 F.2d 467, 470 (8th Cir. 1989) (noting that the Fourth Circuit has awarded damages based on the value of the policy, while the Seventh and Ninth Circuits award damages based on the cost of substitute insurance coverage or actual costs included in securing medical care), the more recent cases have tended to follow the latter approach, awarding damages based on actual expenses incurred by a plaintiff in securing insurance or medical care.  *See Lubke v. City of Arlington*, 455 F.3d 489, 499 (5th Cir. 2006) (ADEA case); *McMillan v. Mass. Soc'y for the Prevention of Cruelty to Animals*, 140 F.3d 288, 305 (1st Cir. 1998) (Equal Pay Act case).  As we did in *Wilson Metal Casket*, we find this approach appropriate and, therefore, hold that the district court abused its discretion in awarding Hance benefits based on the cost of fringe benefits to Norfolk Southern.  Upon remand, the district court

---

[1]The National Labor Relations Board has followed a similar approach in fashioning back pay awards for workers discharged in violation of the National Labor Relations Act.  *See, e.g., Knickerbocker Plastic Co., Inc.*, 104 N.L.R.B. 514, 516 (1953), *enforced*, 218 F.2d 917 (9th Cir. 1955) (holding that a make-whole remedy includes medical and hospitalization expenses that would have been covered by the employees' medical and hospital plans had they not been discharged).  We note the Board's approach here because USERRA has borrowed from other aspects of the NLRA, such as adopting the *Wright Line* evidentiary scheme.

is directed to determine Hance's actual expenses incurred in securing medical care that would have been covered under the Norfolk Southern plan or in obtaining substitute insurance coverage.

Finally, we consider the district court's award of damages equivalent to Railroad Retirement Tax Act (RRTA) contributions that Norfolk Southern would have made on Hance's behalf had he not been discharged. This argument is also presented for the first time on appeal, and we exercise our discretion to address it now. The RRTA imposes a dual tax on railroad employers and employees that is used to fund annuities for retired railroad employees. *See Bowman v. Stumbo*, 735 F.2d 192, 196 n.7 (6th Cir. 1984). Railroad employers are "responsible for withholding the employee's share and also required to pay over both [the employer's and employee's] portions to the IRS." *Chicago Milwaukee Corp. v. United States*, 35 Fed. Cl. 447, 449 (1996), *aff'd* 141 F.3d 1112 (Fed. Cir. 1998). Benefits under RRTA are divided into two tiers. Tier I benefits take the place of Social Security, from which railway workers are exempt, and Tier II benefits are similar to those that workers would receive from a private multi-employer pension fund. *See* Kevin Whitman, *An Overview of the Railroad Retirement Program*, Soc. Security Bull., Oct. 2008, at 41, 42-43. Norfolk Southern responds that Hance is not entitled to receive damages in the amount of estimated future RRTA contributions because he would not have directly received these benefits in his pay and because Norfolk Southern will be obligated under the RRTA to pay the tax on Hance's back pay.

An employer is liable to a prevailing employee for lost fringe benefits "which an employer would have paid the employee in the normal course of business." *Mitchell v. Seaboard Sys. R.R.*, 883 F.2d 451, 453 (6th Cir. 1989); *see also Rasimas*, 714 F.2d at 626. In addition, awards of back pay are subject to employment taxes as if they were wages. *See*, *e.g.*, *Soc. Sec. Bd. v. Nierotko*, 327 U.S. 358, 364 (1946) (holding that a back pay award under the National Labor Relations Act should be treated as "wages" for purposes of the Social Security Act); *Bowman v. United States*, 824 F.2d 528, 529 (6th Cir. 1987) (holding that back pay in a race-discrimination case constitutes "wages" under the Social Security Act). The Railroad Retirement Tax Act and its accompanying

regulations also require an employer to pay Tier I and Tier II taxes on all "compensation" to employees, including payment "for time lost." *See* 45 U.S.C. § 231(h)(2); 20 C.F.R. § 211.2(a). Thus, Norfolk Southern will be required to report and pay Tier I and Tier II taxes on the back pay award, and Hance will receive retirement credit for the time periods covered by the back pay award, putting him in the position he would have been in had he not been discharged.[2]

As a result, the district court's award of substitute retirement benefits to Hance cannot stand because it goes beyond what is needed to make the plaintiff whole. We therefore vacate the district court's award of retirement benefits and direct the district court to enter an order requiring Norfolk Southern to comply with its obligation to pay Tier I and Tier II taxes on back pay awarded to Hance and to report retirement credit covering the time period during which Hance was unlawfully out of work.

## *CONCLUSION*

For the reasons set out above, we conclude that the district court properly imposed liability on Norfolk Southern for violation of USERRA, and we AFFIRM its entry of judgment in Hance's favor on that issue. However, because we find that the court's calculation of certain aspects of the award of damages requires correction, we REVERSE that portion of the district court's judgment and REMAND this case for additional findings of fact and the entry of a new damages award consistent with this opinion.

---

[2] RRTA benefits also contain a vesting requirement. A rail worker must have completed five years of service, accrued after December 31, 1995, in order to be eligible for an RRTA annuity. *See* 45 U.S.C. § 231a(a). So long as Hance receives credit for the years of service covered by the present back pay award, he should be eligible to receive the same benefits as if he had not been discharged. *See Blackwell v. Sun Elec. Corp.*, 696 F.2d 1176, 1185 & n.15 (6th Cir. 1983) (denying pension benefits to an ADEA plaintiff because his benefits would not vest for five more years and "[i]t would be too speculative to grant benefits that would not vest until such a distant time in the future," but concluding, in dicta, that a discriminatee granted reinstatement would be entitled to pension contributions in "the amount that would have been contributed in the period between the unlawful discharge and reinstatement.").