**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 16a0199n.06

No. 15-5858

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Apr 08, 2016
DEBORAH S. HUNT, Clerk

KELLY HANCE,                                          )
                                                     )
      **Plaintiff-Appellant,**                  )   ON APPEAL FROM THE
                                                     )   UNITED STATES DISTRICT
v.                                                   )   COURT FOR THE WESTERN
                                                     )   DISTRICT OF TENNESSEE
BNSF RAILWAY COMPANY,                                )
                                                     )
      **Defendant-Appellee.**                  )   **OPINION**
                                                     )

Before:  **MOORE, GIBBONS, and DAVIS,**[*] **Circuit Judges.**

    **KAREN NELSON MOORE, Circuit Judge.**  In 2013, Kelly Hance applied for a job with the BNSF Railway Company ("BNSF").  In his application materials and at an in-person interview, Hance stated that he had worked for another railroad, Norfolk Southern Railway Company ("NSRC"), from 1999 until 2009.  However, in response to questions from his interviewer, Hance revealed that NSRC had fired him in 2001, that he had sued NSRC under the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), and that this court ultimately found that NSRC had discriminated against Hance in violation of the USERRA.  BNSF did not offer Hance a job.  Hance then sued BNSF under the USERRA, claiming that its decision not to extend him a job offer was retaliation for his suit against NSRC.  After a two-day bench trial, the district court entered judgment in favor of BNSF.  For the reasons set forth below, we **AFFIRM**.

---

[*]The Honorable Andre M. Davis, Senior United States Circuit Judge for the United States Court of Appeals for the Fourth Circuit, sitting by designation.

No. 15-5858
*Hance v. BNSF Railway Company*

## I. FACTS AND PROCEDURE

### A. Facts

This is Hance's second time before us. In *Hance v. Norfolk Southern Railway Company*, 571 F.3d 511 (6th Cir. 2009), a different panel of this court held that Hance had stated a valid claim of USERRA discrimination against his previous employer, NSRC. *Id.* at 523. Because the facts of that dispute—and how Hance represented those facts to BNSF—are important to the case at bar, we provide a brief summary of Hance's previous USERRA suit, then address the facts of this case.

#### 1. *Hance v. Norfolk Southern R. Co.*

Hance joined the National Guard in December 1996. *Id.* at 515.[1] In May 1999, Hance joined NSRC as a conductor trainee. R. 89 (Trial Tr. (Hance) at 61:24–62:2) (Page ID #803–04). Due to a series of furloughs and geographic transfers, Hance performed no work for NSRC after January 18, 2001. *Id.* at 64:9–18 (Page ID #806). NSRC terminated Hance in August 2001, finding him guilty of insubordination when he refused to report to work after being transferred to Virginia. *Id.* at 62:22–66:3 (Page ID #804–08); *Hance*, 571 F.3d at 516.

After exhausting his administrative remedies, in 2004 Hance sued NSRC in the United States District Court for the Eastern District of Tennessee. R. 92 (7/15/15 Mem. Op. at 3) (Page ID #1096). Hance claimed that NSRC violated two statutes when it fired him: the Railway Labor Act and USERRA. *Id.* The district court held that NSRC violated the USERRA because

---

[1]At trial, Hance agreed that our *Hance* opinion "accurately reflect[ed] the factual situations that happened during the Norfolk Southern case." R. 89 (Trial Tr. (Hance) at 31:19–23) (Page ID #773). We thus cite *Hance* and its summary of the facts of Hance's previous lawsuit throughout this opinion.

Hance's "military service was a 'motivating factor' in" NSRC's decision to fire him. *Hance*, 571 F.3d at 517. That court ordered NSRC to reinstate Hance's employment and awarded Hance "back pay, lost benefits, and interest in the amount of $352,845.93, as well as attorney fees." *Id.*

We affirmed the district court's holding that NSRC had violated the USERRA. *Id.* at 523. However, we remanded Hance's case to the district court so it could recalculate Hance's damages award. *Id.* at 519–23.

Hance never rejoined NSRC. R. 89 (Trial Tr. (Hance) at 32:7–13) (Page ID #774). Instead, Hance and NSRC entered into a settlement agreement, pursuant to which NSRC paid Hance $593,501.82. *Id.* at 71:11–15 (Page ID #813). As a result, Hance worked for NSRC only for roughly a year and a half (from May 1999 through January 2001). R. 92 (7/15/15 Mem. Op. at 3) (Page ID #1096). However, the Railroad Retirement Board gave Hance a "BA-6" form that credited Hance with ten years of railroad service. R. 89 (Trial Tr. (Hance) at 35:9–24) (Page ID #777); R. 92 (7/15/15 Mem. Op. at 5–6) (Page ID #1098–99).

**2. Hance applies for a job with BNSF.**

On January 13, 2013, Hance completed an online application for a Conductor Trainee job with BNSF. R. 89 (Trial Tr. (Hance) at 33:6–12) (Page ID #775). The application asked Hance questions about his employment history; three bear mention here:

1. In response to the question "Have you ever been employed by a railroad?" Hance responded "Yes," and listed NSRC as his previous railroad employer. R. 21-4 (Hance BNSF Application at 1) (Page ID #118).

3

2. Hance listed his employment dates with NSRC as "5/1999 to 12/2009." *Id.* He listed the same dates ("5/25/1999–12/22/2009") on the following page of the application, in a section titled "Work Experience." *Id.* at 2 (Page ID #119).

3. In response to a question asking Hance his "Reason for Leaving" NSRC, Hance replied: "Resigned with Notice." *Id.* at 1 (Page ID #118).

For none of these three questions did Hance select potential answers from a drop-down menu; rather, he typed the answers himself. R. 89 (Trial Tr. (Kazen) at 137:11–24) (Page ID #879).

Hance was one of 524 applicants for the Conductor Trainee position. R. 89 (Trial Tr. (Kazen) at 116:4–12) (Page ID #858). By BNSF's account, it was an important job that carried significant responsibilities: a train conductor functions like the "[c]aptain of [a] ship," and BNSF's ideal candidate was "an extremely responsible individual, who [was] trustworthy [and] honest." *Id.* at 202:12–203:12 (Page ID #944–45). After preliminarily screening the 524 applicants, BNSF invited about fifty—including Hance—to attend an in-person hiring event on February 7, 2013 in Birmingham, Alabama. *Id.* at 116:4–12 (Page ID #858); R. 92 (7/15/15 Mem. Op. at 2) (Page ID #1095). Per BNSF policy, BNSF did not run a background check on Hance before inviting him to the hiring event; BNSF completes background checks only for applicants who have received conditional offers of employment. R. 89 (Trial Tr. (Kazen) at 116:22–117:2) (Page ID #858–59).

### 3. BNSF interviews Hance.

Hance attended BNSF's Birmingham hiring event. R. 84 (Pretrial Order ¶ 7(e)) (Page ID #727–28). Maxine Kazen—a former BNSF employee who now performs human-resources consulting for BNSF—helped lead the event. *Id.* ¶ 7(f) (Page ID #728); R. 89 (Trial Tr. (Kazen) at 184:21–185:12) (Page ID #926–27); R. 92 (7/15/15 Mem. Op. at 2) (Page ID #1095).

Kazen began the day with a slideshow that addressed the hiring event's schedule, the open Conductor Trainee position, and information about BNSF. R. 89 (Trial Tr. (Kazen) at 191:24–192:14) (Page ID #933–34). Kazen also told the applicants "about the in-depth background check that [] BNSF does and reasons that an offer may or may not be rescinded if the background check does not comply with what they have stated on their application." *Id.* at 192:15–18 (Page ID #934). Kazen said that BNSF might rescind an employment offer if, for example: (1) a background check revealed "a big variance" between the employment dates an applicant listed on his application and his actual dates of employment, or (2) an applicant misrepresented his reasons for leaving a previous employer. *Id.* at 192:19–193:23 (Page ID #934–35).

When Kazen's presentation concluded, the applicants took a written test that assessed their decision-making ability. *Id.* at 196:14–21 (Page ID #938). Hance and thirty-one others passed the test and proceeded to in-person interviews. *Id.* at 190:13–16 (Page ID #932). Six people, including Kazen, conducted interviews that day in three two-person panels. *Id.* at 190:17–20 (Page ID #932). Kazen interviewed applicants with Mike Snow, "a union-

represented employee" at BNSF who had no hiring authority. *Id.* 190:21–191:3 (Page ID #932–33).

All of the interviewers asked candidates the same questions from a standard BNSF questionnaire: "Maintenance of Way and Train Service: Panel Interview—Form A." R. 89-1 (Trial Tr. (Kazen) at 230:3–231:1) (Page ID #972–73); R. 43 (Panel Interview—Form A) (Page ID #361). The interviewers evaluated applicants across six metrics listed in the questionnaire: (1) "review of job application"; (2) "work experience and training"; (3) "work ethic and conscientiousness"; (4) "safety behaviors and beliefs"; (5) "working with others"; and (6) "communication." R. 43 (Panel Interview—Form A at 2–7) (Page ID #362–67). For each category, the interviewers rated applicants "acceptable" or "not acceptable" based on enumerated scoring criteria. *Id.*

Kazen and Snow read Hance's employment application, cover letter, and resume before his interview. R. 89 (Trial Tr. (Kazen) at 208:25–209:2) (Page ID #950–51). In his cover letter, Hance wrote that he "ha[d] over ten years of experience in implementing solid strategies" as a railroad employee. *Id.* at 209:20–210:9 (Page ID #951–52). On his resume, Hance listed his dates of employment with NSRC as 1999 through 2009, and stated that he had "work[ed] as a conductor, switchman, [and] brakeman" at the company. *Id.* at 210:22–211:12 (Page ID #952–53). In both his cover letter and resume, Hance wrote that he had served in a leadership role at NSRC. *Id.* at 209:25–211:12 (Page ID #951–53).

Kazen began the interview by asking Hance about his work experience. R. 92 (7/15/15 Mem. Op. at 4) (Page ID #1097). Hance told Kazen that he started working for NSRC in 1999 and left in 2009 without any safety or substance-abuse violations. R. 89 (Trial Tr. (Kazen) at 143:23–144:5) (Page ID #885–86). Kazen asked Hance to verify those employment dates, and he did. *Id.* at 127:16–21 (Page ID #869). Hance also told Kazen that "he had significant railroad experience." *Id.* at 144:5–8 (Page ID #886).

Because Hance wrote on his employment application that he was presently employed by the Tennessee National Guard and had been since 1996, Kazen asked him if he would have any trouble attending a training class scheduled for January. *Id.* at 124:13–24,127:12–15 (Page ID #866, 869). Per Kazen's written comments during the interview, Hance explained that his term with the National Guard would end in December 2013, and that he had weekend commitments in connection with his service. R. 43 (Panel Interview—Form A at 2) (Page ID #362).

Moving to the "work ethic and conscientiousness" section of the questionnaire, Kazen asked Hance if he'd ever been disciplined by an employer. R. 89 (Trial Tr. (Kazen) at 146:17–147:3) (Page ID #888–89). Hance responded, "no." *Id.* at 243:3–12 (Page ID #985).

After that exchange, Kazen noticed that Hance's posture was becoming more defensive: he avoided eye contact with Kazen and Snow and crossed his arms. *Id.* at 243:13–23 (Page ID #985). When Kazen asked Hance if he'd ever been terminated from a job, Hance admitted that NSRC had fired him. *Id.* at 244:5–13 (Page ID #986). Hance—who at that point had said nothing about his suit against NSRC—explained that the Sixth Circuit had ordered him

reinstated. *Id.* at 244:17–24 (Page ID #986). Kazen asked Hance why he hadn't gone back to work at NSRC; Hance replied: "Because I knew they would get me." *Id.* at 145:1–11 (Page ID #887). Hance also gave Kazen a copy of this court's decision in his case, which he had brought with him to the interview. R. 92 (7/15/15 Mem. Op. at 4) (Page ID #1097). Kazen didn't read the opinion during Hance's interview, but did review it that evening. *Id.* at 4–5 (Page ID #1097–98).

Kazen added up the dates, and realized that Hance "did not have ten years or anywhere close to ten years of experience" working with NSRC "as he stated in his resume and his application." R. 89 (Trial Tr. (Kazen) at 251:1–6) (Page ID #993). She ended up giving Hance two "not acceptable" marks on the interview questionnaire: one for "work ethic and conscientious," and another for "communication" because of his evasive body language. R. 43 (Panel Interview—Form A at 8) (Page ID #368); R. 92 (7/15/15 Mem. Op. at 5) (Page ID #1098). On the last page of the questionnaire, Kazen gave Hance an overall grade of "Not Acceptable" and, under a section marked "Final Hiring Decision," selected "Do Not Offer a Position." R. 43 (Panel Interview—Form A at 8) (Page ID #368).

### 4. BNSF does not offer Hance a job.

The night after she interviewed Hance, Kazen called two BNSF employees—Dane Freshour and Don Anderson—to discuss the hiring event. R. 89 (Trial Tr. (Kazen) at 148:13–22) (Page ID #890). When the three discussed Hance, Kazen recommended that BNSF not hire him; Freshour and Anderson "rubberstamped her decision." *Id.*; R. 92 (7/15/15 Mem. Op. at 6) (Page

ID #1099). To be clear: Kazen "had the overall human resources responsibility for" not hiring

Hance. R. 89 (Trial Tr. (Kazen) at 148:13–15) (Page ID #890).

BNSF then sent Hance a form rejection letter. R. 43 (Letter from BNSF Recruiting Team

to Kelly Hance) (Page ID #382). It stated, in relevant part:

> BNSF evaluates a variety of factors when considering applicants for this position. These factors include work history, prior related training and education, interpersonal skills, your work approach and style, and oral communication skills. Unfortunately, after an analysis of our present business needs and an evaluation of your skills, qualifications and experience, we are unable to offer you a position at this time.

*Id.*

## B. Procedural History

### 1. Hance sues BNSF under the USERRA.

On August 23, 2013, Hance sued BNSF in the United States District Court for the

Western District of Tennessee. R. 1 (Compl.) (Page ID #1). Hance alleged that BNSF violated

the USERRA because it relied on two prohibited "motivating factors" when it refused to hire

him: (1) "Hance's present military service"; and (2) "Hance's previous action against [NSRC]."

*Id.* at 3 (Page ID #3).

On October 11, 2013, the district court entered a scheduling order pursuant to Federal

Rule of Civil Procedure 16(b). R. 11 (Rule 16(b) Scheduling Order) (Page ID #27). As relevant

here, the scheduling order set December 17, 2013 as the deadline for both parties to amend their

pleadings. *Id.* at 1 (Page ID #27). The scheduling order concluded: "This order has been

entered after consultation with the parties. Absent good cause shown, the deadlines set by this order will not be modified or extended." *Id.* at 3 (Page ID #29).

**2. The district court enters summary judgment in favor of BNSF on Hance's military-service discrimination claim.**

BNSF moved for summary judgment on August 18, 2013. R. 21 (Def.'s Mot. for Summ. J.) (Page ID #58). The district court granted in part, and denied in part, BNSF's motion. R. 33 (Order Granting in Part and Denying in Part Def.'s Mot. for Summ. J. ("Summ. J. Op.") at 14) (Page ID #285). The district court granted summary judgment in favor of BNSF on Hance's military-service discrimination claim, finding no fact dispute that "Hance's ongoing military service was not a discriminatory motivating factor establishing a prima facie case under the USERRA." *Id.* at 8 (Page ID #279).

However, the district court denied summary judgment on Hance's claim that BNSF retaliated against him for suing NSRC. The district court held that Hance had raised a fact dispute on this issue by pointing to "inconsistencies between BNSF's proffered reasons [for not hiring him] and other actions." *Id.* at 10 (Page ID #281). For example, in response to Hance's interrogatories, BNSF claimed that it did not hire Hance "because his in-person interview revealed that [his] skills, qualifications and experience did not match . . . [BNSF's] needs. [BNSF] considered factors such as [Hance's] work history, prior related training and education, work approach and style and communication skills." *Id.* (quoting R. 24-6 (Def.'s Resp. to Pltf.'s First Interrog. at 4) (Page ID #220)). In contrast, during her deposition, Kazen testified that she did not hire Hance because she thought he was dishonest. *Id.* That discrepancy, the court held,

10

was enough to establish a prima facie USERRA case. *Id.* at 11 (Page ID #282). Because the district court also found disputed issues of fact about BSNF's claim that it "would not have hired Hance" even if he had never sued NSRC, it allowed Hance's USERRA retaliation claim to go forward. *Id.* at 14 (Page ID #285).

### 3. Hance attempts to add two new claims after the deadline for amending pleadings.

Hance and BNSF filed a Proposed Joint Pre-Trial Order on February 6, 2015. R. 64 (Proposed Joint Pre-Trial Order) (Page ID #567). In that proposed order, Hance added two claims that he had not alleged in his complaint (or any subsequent pleadings). First, under a section titled "Contested Issues of Law by Plaintiff," Hance wrote: "Was the failure to hire Mr. Hance willful." *Id.* ¶ 10(i) (Page ID #576). Second, under the order's "Damages" section, Hance wrote: "If the Court finds the action willful, it may double the damages award." *Id.* ¶ 20 (Page ID #581). BNSF did not catch either of Hance's new references to willfulness before filing the proposed order. R. 73 (Mot. to Strike Portion of Joint Proposed Pre-Trial Order and Mem. in Support ("Mot. to Strike") at 2 n.1) (Page ID #634).

BNSF moved to strike Hance's claim of willfulness and his related request for damages. *Id.* at 1 (Page ID #633). The district court granted BNSF's motion, although it noted that, because the order the parties had submitted was merely proposed, it was "more aptly characterized as an objection to a not-yet-finalized pretrial order." R. 83 (Order Regarding Pretrial Order and Striking Jury Demand at 1, 3) (Page ID #717, 719). The district court held that Hance, by submitting two new claims in the Proposed Joint Pre-Trial Order, was "essentially

seeking to amend his pleadings under Rule 15(a)(2)." *Id.* at 3 (Page ID #719). Because Hance did so fifteen months after the amendment deadline the district court had set, without seeking leave of court or notifying BNSF, the district court denied the amendment. *Id.* at 4 (Page ID #720). The district court also concluded that, because Hance would not be able to allege willful misconduct on BNSF's part, he could not "recover liquidated damages under the USERRA." *Id.* And because without a liquidated damages claim, Hance's suit—which sought reinstatement and back pay—was "a suit of equity," the district court also struck Hance's demand for a jury trial. *Id.* at 7–8 (Page ID #723–24).

4. **After a bench trial, the district court enters judgment in favor of BNSF.**

The district court conducted a two-day bench trial on April 20 and 21, 2015. R. 92 (7/15/15 Mem. Op. at 1) (Page ID #1094). On July 15, 2015, the district court issued an opinion finding in favor of BNSF. *Id.* at 11 (Page ID #1104). The district court held that Hance had established a prima facie under the USERRA because BNSF had offered "inconsistent answers" regarding its motivation for not hiring him. *Id.* at 9 (Page ID #1102). However, the court also found that Hance's suit against NSRC "was not a motivating factor in" Kazen's—and by extension, BNSF's—"decision not to hire Hance." *Id.* The court entered judgment in BNSF's favor, and Hance timely appealed. R. 93 (7/15/15 Judgment) (Page ID #1105); R. 94 (Notice of Appeal) (Page ID #1106).

## II. ANALYSIS

Hance raises two claims on appeal, and we review each under a different standard of review.[2]  First, Hance argues that the district court erred when it struck his claim of willfulness and his related request for double damages from the parties' Joint Proposed Pre-Trial Order.  We agree with the district court that, in effect, Hance was attempting to amend his complaint when he inserted these two claims into the proposed pretrial order.  In turn, we review for an abuse of discretion the district court's denial of Hance's request for leave to amend.  *Kreipke v. Wayne State Univ.*, 807 F.3d 768, 781 (6th Cir. 2015).  "A district court abuses its discretion where it applies the incorrect legal standard, misapplies the correct legal standard, or relies upon clearly erroneous findings of fact."  *Fautenberry v. Mitchell*, 572 F.3d 267, 268 (6th Cir. 2009) (quoting *Getsy v. Mitchell*, 495 F.3d 295, 310 (6th Cir. 2007) (en banc)).

Second, Hance argues that that the district court erred by finding in favor of BNSF on Hance's USERRA claim.  Because the district court entered judgment after a bench trial, we review its findings of fact for clear error, and its conclusions of law de novo.  *Calloway v. Caraco Pharm. Labs., Ltd.*, 800 F.3d 244, 251 (6th Cir. 2015).

Both of Hance's claims fail.  First, the district court did not abuse its discretion when it denied Hance's untimely effort to amend his complaint.  Second, BNSF rebutted Hance's prima

---

[2]In heading "II" of Hance's brief, he writes:  "By granting BNSF's motion to strike, the district court effectively denied Hance a trial by jury."  Appellant Br. at 20.  That argument hinges on his claim that the district court, by denying him leave to amend his complaint, erroneously struck his claim for liquidated damages.  *Id.* ("Clearly, if Hance had been allowed to proceed on his claim of liquidated damages, he would have been entitled to a jury.").  Because we hold that the district court did not abuse its discretion when it denied Hance leave to amend, we also reject his argument that the district court erred when it struck his demand for a jury trial.

facie USERRA case by proffering a legitimate, non-discriminatory reason for not hiring him:

BNSF's belief that Hance was dishonest.  We affirm.

**A.  The district court properly rejected Hance's untimely attempt to amend his complaint.**

We begin with Hance's argument that the district court should not have struck his claim

of willfulness and his related request for liquidated damages.  The USERRA "prohibit[s]

discrimination against persons because of their service in the uniformed services."  38 U.S.C.

§ 4301(a)(3).  The statute provides, in relevant part:

> An employer may not discriminate in employment against or take any adverse
> employment action against any person because such person (1) has taken an
> action to enforce a protection afforded any person under this chapter, (2) has
> testified or otherwise made a statement in or in connection with any proceeding
> under this chapter, (3) has assisted or otherwise participated in an investigation
> under this chapter, or (4) has exercised a right provided for in this chapter.

38 U.S.C. § 4311(b).  The "USERRA provides for liquidated damages in an amount equal to lost

wages and benefits 'if the court determines that the employer's failure to comply with the

provisions of [the USERRA] was willful.'"  *Petty v. Metro. Gov't of Nashville & Davidson Cty.*,

687 F.3d 710, 721–22 (6th Cir. 2012) (quoting 38 U.S.C. § 4323(d)(1)(C)).  "The liquidated

damages provision awards plaintiffs double the actual damages suffered under § 4323(d)(1)(B)."

*Koehler v. PepsiAmericas, Inc.*, 268 F. App'x 396, 402 (6th Cir. 2008) (citing 38 U.S.C.

§ 4323(d)(1)(C)).

In his complaint, however, Hance did not allege that BNSF engaged in willful

misconduct, nor did he request double damages under the USERRA.  Thus, as the district court

reasoned, by inserting both claims into the parties' Proposed Joint Pre-Trial Order, Hance was

effectively trying to amend his complaint. We hold that the district court did not abuse its discretion when it rejected Hance's untimely attempt to amend.

Two Federal Rules of Civil Procedure guide our analysis: Rule 15 and Rule 16. Rule 15(a)(2) provides that a party seeking to amend after Rule 15(a)(1)'s twenty-one-day window "may amend its pleading only with the opposing party's written consent or the court's leave"; the Rule adds that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). However, a party attempting to amend a complaint after a deadline established by a *scheduling order* must satisfy a higher bar: Rule 16(b)(4). That Rule provides that "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). In turn, "[o]nce the scheduling order's deadline passes, a plaintiff first must show good cause under Rule 16(b) for failure earlier to seek leave to amend before a court will consider whether amendment is proper under Rule 15(a)." *Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003).

In evaluating whether a moving party has shown "good cause" sufficient to satisfy Rule 16(a)(4), we look to whether the moving party has been "diligen[t] in attempting to meet the [scheduling] order's requirements." *Id.* at 906 (citation omitted). "Another important consideration for . . . deciding whether Rule 16's 'good cause' standard is met is whether the opposing party will suffer prejudice by virtue of the amendment." *Id.*

The district court found that Hance had not established good cause for his untimely amendment. We agree. Pursuant to the district court's scheduling order, the parties had until December 17, 2013 to amend their pleadings. Hance attempted to amend his complaint, without

15

seeking leave of court or notifying BNSF, *fifteen months* after that deadline.  Hance has not

shown—nor, it seems, tried to show—that he attempted diligently to satisfy the district court's

December 17, 2013 deadline.  Moreover, we agree with the district court that granting Hance

leave to amend would have prejudiced BNSF.  Allowing Hance to assert a claim of willfulness

would have exposed BNSF to double damages liability under the USERRA.  Neither party

conducted discovery on this issue, and neither party filed a single motion addressing it before

filing the Joint Proposed Pre-Trial Order.  In sum, the district court was well within its discretion

to deny Hance leave to amend his complaint.

**B.  Hance failed to prove that BNSF retaliated against him in violation of the USERRA.**

The merits of Hance's suit are similarly unavailing.  Hance claims that by not hiring him,

BNSF was retaliating against Hance for suing NSRC.  Although Hance proved a prima facie

USERRA case, we conclude that BNSF clearly rebutted that case by proffering non-

discriminatory reasons for not hiring him.  The district court properly entered judgment in favor

of BNSF.

We have read the USERRA to establish a two-step burden-shifting scheme.  First, to

establish a prima facie USERRA retaliation case, "an employee bears the initial burden of

showing, by a preponderance of the evidence, that his protected status was a motivating factor in

the adverse employment action."  *Escher v. BWXT Y-12, LLC*, 627 F.3d 1020, 1026 (6th Cir.

2010).  "Protected status is a motivating factor if a truthful employer would list it, if asked, as

one of the reasons for its decision."  *Bobo v. United Parcel Serv., Inc.*, 665 F.3d 741, 754 (6th

Cir. 2012) (quoting *Escher*, 627 F.3d at 1026). A USERRA plaintiff can show an employer's

"discriminatory motivation by direct or circumstantial evidence":

> Discriminatory motivation under the USERRA may be reasonably inferred from a variety of factors, including proximity in time between the employee's military activity and the adverse employment action, inconsistencies between the proffered reason and other actions of the employer, an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity, and disparate treatment of certain employees compared to other employees with similar work records or offenses.

*Hance*, 571 F.3d at 518 (citation omitted). "Furthermore, to establish actionable retaliation, the

relevant decision maker, not merely some agent of the defendant, must possess knowledge of the

plaintiff's protected activity." *Escher*, 627 F.3d at 1026.

Second, if a USERRA plaintiff establishes a prima facie case, "the employer then has the

opportunity to come forward with evidence to show, by a preponderance of the evidence, that the

employer would have taken the adverse action anyway, for a valid reason." *Id.* (quoting *Hance*,

571 F.3d at 518).

To begin, we agree with the district court that Hance proved a prima facie case under the

USERRA, because BNSF gave conflicting accounts of its reasons for not hiring Hance. *See*

*Hance*, 571 F.3d at 518. The form rejection letter BNSF sent Hance after his interview and

BNSF's response to Hance's interrogatories suggested that BNSF did not hire Hance because he

was unqualified for the Conductor Trainee position. In both the letter and the interrogatory

response, BNSF wrote that Hance's "work history," "skills," "qualifications," and "experience"

were not a good match for the job. R. 24-6 (Def.'s Resp. to Pltf.'s First Interrog. at 4) (Page ID

17

#220); R. 43 (Letter from BNSF Recruiting Team to Kelly Hance) (Page ID #382). However, at trial, Kazen testified that she did not hire Hance because she thought he was dishonest after he made misrepresentations on his job application. R. 89 (Trial Tr. (Kazen) at 142:9–18, 146:21–23, 155:11–23) (Page ID #884, 888, 897). Because these "inconsistencies" are circumstantial evidence of "discriminatory motivation," Hance has satisfied the USERRA's first step. *Hance*, 571 F.3d at 518.

However, we also agree with the district court that BNSF rebutted Hance's prima facie case. BNSF proved by a preponderance that it rejected Hance's application for "a valid, nondiscriminatory" reason, *id.*: BNSF thought that Hance was untrustworthy. In evaluating BNSF's affirmative defense, we note that "this court has adopted a 'modified honest belief' rule which states that 'for an employer to avoid a finding that its claimed nondiscriminatory reason was pretextual, the employer must be able to establish its reasonable reliance on the particularized facts that were before it at the time the decision was made.'" *Escher*, 627 F.3d at 1030 (quoting *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 708 (6th Cir. 2006)). Kazen made the decision not to hire Hance, and we defer to the district court's finding that she testified credibly at trial. *See Lindstrom v. A-C Prod. Liab. Trust*, 424 F.3d 488, 492 (6th Cir. 2005). We look, then, to the facts that were before Kazen when she decided not to hire Hance, and whether those facts support her repeated assertions that she made that decision because she thought Hance had been dishonest.

Kazen's interview with Hance gave her good reason to believe that he had falsified information about his professional history. On his employment application, Hance listed NSRC as his previous railroad employer, wrote that he had worked there from 1999 through 2009, and stated that he resigned from the company with notice. He underscored this information in his cover letter, in which he discussed his decade of railroad experience. And Hance confirmed his dates of employment with NSRC during his interview with Kazen. It was only after Kazen asked Hance if he had ever been terminated that he revealed he had been involved in a protracted lawsuit with NSRC. Moreover, Hance told Kazen that although this court had ordered his reinstatement, he declined, opting instead for a cash settlement. Thus, after the interview, Kazen realized that Hance—in contrast to the representations he made in his application and during his interview—had *not* spent a decade working for a railroad, and *had* been terminated by a prior employer.

As the district court noted, "Hance's alleged falsification of [his] application is nuanced." R. 33 (Summ. J. Op. at 12) (Page ID #283). This court ordered NSRC to reinstate Hance's employment in 2009, and the Railroad Retirement Board credited Hance with ten years of service despite the fact that he left NSRC in 2001. We express no opinion as to whether Hance intended to deceive BNSF; that is not relevant to our evaluation of BNSF's affirmative defense. Rather, we are persuaded that BNSF proved, by a preponderance of the evidence, that it did not hire Hance because the discrepancies between his application materials and his actual work history suggested that he was dishonest. Because we are satisfied that BNSF's belief that Hance

was dishonest, "standing alone, would have induced [BNSF] to" not offer him the Conductor Trainee position, *Hance*, 571 F.3d at 518 (citation omitted), Hance's USERRA retaliation claim against BNSF fails.

## III.  CONCLUSION

For the reasons set forth above, we **AFFIRM** the district court's judgment in favor of BNSF.