RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 17a0102p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

KENNETH E. SAVAGE,

*Plaintiff-Appellant*,

*v.*

FEDERAL EXPRESS CORPORATION, dba FedEx Express;
FEDEX CORPORATION EMPLOYEES' PENSION PLAN;
FEDEX CORPORATION RETIREMENT SAVINGS PLAN,

*Defendants-Appellees*.

No. 16-5244

---

Appeal from the United States District Court for
the Western District of Tennessee at Memphis.
No. 2:14-cv-02057—S. Thomas Anderson, District Judge.

Argued: December 9, 2016

Decided and Filed: May 10, 2017

Before: BATCHELDER, STRANCH, and DONALD, Circuit Judges

---

## COUNSEL

**ARGUED:** Peter Romer-Friedman, WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS AND URBAN AFFAIRS, Washington, D.C., for Appellant. Terrence O. Reed, FEDERAL EXPRESS CORPORATION, Memphis, Tennessee, for Appellees. **ON BRIEF:** Peter Romer-Friedman, WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS AND URBAN AFFAIRS, Washington, D.C., Kathryn S. Piscitelli, Orlando, Florida, Meghan M. Boone, INSTITUTE FOR PUBLIC REPRESENTATION, Washington, D.C., for Appellant. Carl K. Morrison, Joseph B. Reafsnyder, FEDERAL EXPRESS CORPORATION, Memphis, Tennessee, for Appellees.

STRANCH, J., delivered the opinion of the court in which DONALD, J., joined, and BATCHELDER, J., joined in part. BATCHELDER, J. (pp. 20–22), delivered a separate opinion concurring in part and dissenting in part.

_____

**OPINION**

_____

JANE B. STRANCH, Circuit Judge.  Kenneth Savage worked as an aviation mechanic for FedEx, while simultaneously serving as a lieutenant in the United States Naval Reserve.  He was terminated by FedEx for violating its reduced-rate shipping policy and acceptable conduct policy.  Savage brought claims against Federal Express Corporation d/b/a FedEx Express, FedEx Corporation Employees' Pension Plan, and FedEx Corporation Retirement Savings Plan (collectively "FedEx") for discrimination, retaliation, and improper benefit calculations under the Uniformed Services Employment and Reemployment Rights Act (USERRA), 38 U.S.C. § 431 et seq.  The district court granted summary judgment to the defendants.  For the following reasons, we **AFFIRM** in part and **REVERSE** in part the judgment of the district court.

**I.  BACKGROUND**

Kenneth Savage worked as a Senior Aircraft Mechanic at FedEx's Memphis hub from August 2001 to September 2012.  He had a strong record as an employee during his tenure at FedEx, earning top performance reviews and various awards and was never formally disciplined prior to his termination.  During that time, Savage also served as a lieutenant in the United States Naval Reserve, where he served as an aircraft maintenance officer.  Over the course of his eleven years at FedEx, Savage was allowed to: take time off to fulfill his military duties; fly on cargo planes to military sites to perform those duties; and use FedEx computers to complete military training while at work.  Savage was one of many current or former service members employed by FedEx.

Savage participated in the FedEx Corporation Employees' Pension Plan ("pension plan"), a defined benefit plan covering all eligible and participating employees.  At the time, Mercer, an actuarial and retirement benefits administrative firm separate from FedEx, calculated and administered retirement benefits under the pension plan.  Savage states that in late May or early June 2012, he notified his manager, human resources advisor, and other individuals in FedEx's benefit department about a discrepancy in his pension calculations.  He also raised the issue with

the FedEx Retirement Center, which is not a FedEx entity but a specific group of Mercer employees. Savage states that he continued to make complaints through July and August.

Savage was not the first to complain about the calculation of pension benefits. Cliff Cunningham, another service member and FedEx employee in Savage's work group, also stated that he believed his military service had resulted in FedEx incorrectly crediting his retirement accounts. In 2008, FedEx settled a dispute with its pilots' union over "FedEx's failure to make the correct USERRA pension contributions for pilots serving in the military." Savage and other FedEx mechanics were participants in the same pension plan as the pilots.

FedEx allowed employees, their spouses, and dependents to utilize shipping services at a reduced rate, though this discount could not be used for any type of commercial benefit or commercial purpose not related to FedEx Express, or for any commercial enterprise or business, either non-profit or for-profit. FedEx's acceptable conduct policy states that "[v]iolation of guidelines and policy for employee reduced rate shipping . . . may result in severe disciplinary action up to and including termination." These policies are listed in FedEx manuals and handbooks that Savage had access to throughout the course of his employment. At the time Savage signed up for his reduced-rate shipping account, he agreed to the terms and conditions of the policy. Savage states that the policy allowed FedEx employees to use reduced shipping rates for their personal benefit, and was revised on September 2, 2012, to explicitly prohibit employees from using the discount to ship merchandise sold on eBay. Savage asserts that he was not notified of this change, and on September 4, his wife used the employee discount to ship one or two items she had sold on eBay. Savage and his wife had previously used the discounted shipping rate to transport various items they had sold through websites like eBay and Craigslist.

FedEx routinely investigates whether employees abuse their shipping privileges. In 2012, Savage used his reduced-rate shipping discount 90 times between March and August, and appeared on FedEx's audit for this high volume of shipments. Savage's name did not appear on the initial quarterly audit list, but was added as part of an additional pull made because many of the employees on the first list were already under investigation. Patricia Williams, a FedEx security specialist, investigated Savage's use of the discount. After reviewing the nature and volume of his shipments, Williams interviewed Savage on September 12. He told her that he

was aware of the shipping policy and that he and his wife sold items online using his discount. Specifically, Savage said that he and his wife would buy products, like saddles and bridles, from sellers at online auctions. They would then fix up the merchandise for resale, list the goods for resale online, and ship the merchandise to buyers using his employee discount. Savage later clarified that he and his wife "'resold' items that [they] currently owned," and did not "buy and re[sell] these items to make a profit." Savage also maintained that he was not running a business with these transactions. He asserts that many employees found the shipping policy vague and confusing, in part because "FedEx constantly changed its discount shipping policy, often without given notice to its employees."

At the end of the interview, Savage was suspended with pay pending investigation. The suspension occurred 34 days after he had completed a period of military service, and less than a month after he complained to the FedEx Retirement Center about the calculation of his retirement benefits. Savage submitted a statement a few days later, expressing his belief that his use of the policy had been for a permissible purpose under the FedEx policy in place prior to September 2. Williams concluded that Savage had violated the shipping policy by selling merchandise and using his discount to ship the items to buyers. Williams testified that at the time of her investigation and the interview, she was not aware that Savage was in the military or had made complaints about how FedEx treated military employees. Williams provided her conclusions to Thomas Lott, the human resources advisor for aviation mechanics at the Memphis hub, who forwarded the results to Maureen Patton, the managing director. Savage was terminated on September 20, 42 days after completing military service and a little over a month after he contacted the FedEx Retirement Center about his benefits. Savage unsuccessfully appealed his termination through FedEx's internal appeal process.

Savage argues that FedEx had "no black-and-white rule or requirement that any employee who violates its discount shipping policy will or must be terminated," but that such a decision was discretionary. He also states that other non-protected FedEx employees violated the reduced-rate shipping policy and received only warnings letters as discipline. Lott stated that Savage's termination was consistent with FedEx policy, and that he was not aware of any employee who violated the shipping policy and was not terminated. Troy Turnipseed, Savage's

manager, who drafted his termination letter but was not involved in the investigation, stated the same.

Following his September 2012 termination, Savage filed a complaint with the Department of Labor Veterans' Training Service (DOL-VETS). In October 2013, during DOL-VETS's investigation, a lawyer in FedEx's tax and employee benefits legal department wrote that "[u]pon review, we discovered that due to the manner in which [Lt.] Savage's information was entered into the system, the imputed earnings for certain short-term leaves were not captured for pension purposes." (R. 99-10 at PageID 2589) Savage asserts that FedEx incorrectly calculated his retirement benefits on three separate occasions.

At this time, FedEx recalculated Savage's earnings for each period of time he was on military leave between May 20, 2002 and September 21, 2012. Because Savage's rate of pay during these periods was not "reasonably certain due to shift differential pay, overtime pay, and premium license pay" that he received, FedEx attempted to use the "12-month look-back methodology" to estimate Savage's compensation during service as required by USERRA. FedEx calculated the estimation by a two-step process: first, it calculated his average rate of pay during the 12 months prior to each period of service; and second, it used that average rate of pay to calculate his imputed earnings. Because Savage was on leave for 55 separate time periods, totaling 2,166 hours of military leave associated with his scheduled work days, FedEx calculated 55 average rates of pay. To determine these average rates of pay, FedEx used the equation: (Total Pensionable Earnings divided by Total Hours Paid) = Average Rate of Pay. FedEx then calculated Savage's imputed earnings using the equation (Average Rate of Pay multiplied by *Imputed* Hours of Work Missed for Military Service) = Imputed Earnings, and determined that he had earned a total of $92,463.50 for the periods he was on military leave. After recalculating Savage's imputed earnings, FedEx provided this information to Mercer to adjust his retirement benefits under the pension plan. Savage asserts that FedEx has still not correctly calculated his retirement benefits because its method of estimation did not accurately capture his potential overtime hours during his periods of military leave. He argues that under USERRA, FedEx should have calculated his contributions in one step based on the average compensation he earned for all hours that he worked during the 12 months before each period of military service,

instead of a two-step process that used a look-back method to determine only his average rate of pay and multiplied that rate by the hours that FedEx *imputed* to him for each particular period of absence.

Savage filed suit against FedEx in District Court on January 26, 2014, alleging USERRA discrimination and retaliation claims under 38 U.S.C. § 4311 and a claim under USERRA's pension provision, 38 U.S.C. § 4318. FedEx filed a motion for summary judgment, which the district court granted.

## II. ANALYSIS

We review a district court's grant of summary judgment de novo and consider the facts and any inferences drawn in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is only appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The burden falls to the moving party to demonstrate that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255. The central question at the summary judgment stage is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251.

USERRA prohibits an employer from discriminating against a member of the uniformed services for his membership in or obligations to those services, and from taking an adverse employment action against an employee who exercises his rights under the statute. *See* 38 U.S.C. § 4311. Because Congress enacted USERRA to "protect the rights of veterans and members of the uniformed services, [the statute] must be broadly construed in favor of its military beneficiaries." *Petty v. Metro Gov't of Nashville-Davidson Cty.*, 538 F.3d 431, 439 (6th Cir. 2008); *see also Bobo v. United Parcel Serv., Inc.*, 665 F.3d 741, 754 (6th Cir. 2012). Savage makes three claims under USERRA, alleging that FedEx: (1) discriminated against him on the basis of his military service; (2) retaliated against him for exercising his USERRA rights; and

(3) improperly denied him retirement benefits that he was entitled to under the statute's pension provision.

### A. USERRA Discrimination and Retaliation Claims

Savage alleges that by terminating him for violating the reduced-rate shipping policy, FedEx discriminated against him for performing his military service and retaliated against him for complaining about the calculation of his pension benefits. The district court found that Savage could not establish a prima facie case of discrimination or retaliation under USERRA, and that even if he had, FedEx proved it would have fired him absent discrimination or retaliation.

USERRA prohibits an employer from denying "initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of" the employee's "membership, . . . performance of service, . . . or obligation" to the uniformed services. 38 U.S.C. § 4311(a). Similarly, the statute prohibits an employer from taking an adverse employment action against an employee in retaliation for his exercise of rights under USERRA. *Id.* § 4311(b). An employer is liable under the statue if "the person's . . . obligation for service in the uniformed service" or "action to enforce a protection afforded any person" under USERRA is "a motivating factor in the employer's action." *Id.* § 4311(c)(1).

We evaluate a claim under USERRA's anti-discrimination provision in two steps. First, the plaintiff "has the initial burden of proving a prima facie case of discrimination [or retaliation] by showing, by a preponderance of the evidence, that his protected status was a substantial or motivating factor in the adverse employment action." *Petty*, 538 F.3d at 446. Once the plaintiff has established his prima facie case, "the employer then has the opportunity to come forward with evidence to show, by a preponderance of the evidence, that the employer would have taken the adverse action anyway, for a valid reason." *Hance v. Norfolk Southern Ry. Co.*, 571 F.3d 511, 518 (6th Cir. 2009).

1. Prima Facie Case

A plaintiff bringing claims under USERRA has the initial burden of showing that his military service was a substantial or motivating factor in the adverse employment action, and may establish his case through direct or circumstantial evidence. *Bobo*, 665 F.3d at 755; *see also Carroll v. Del. River Port Auth.*, 843 F.3d 129, 132 (3d Cir. 2016) ("All courts of appeals interpreting USERRA have recognized . . . that a plaintiff meets his . . . initial burden simply by showing that military service was 'a substantial or motivating factor' in the adverse employment action."). A number of factors can create an inference of discrimination or retaliation, including:

> proximity in time between the employee's military activity and the adverse employment action, inconsistencies between the proffered reason and other actions of the employer, an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity, and disparate treatment of certain employees compared to other employees with similar work records or offenses.

*Hance*, 571 F.3d at 518. Savage argues that he has met his burden by showing: (1) close temporal proximity between his complaints and military leave and the adverse action taken against him; (2) FedEx's hostility toward him and other service members; (3) that he was targeted for his leadership in efforts to enforce USERRA at FedEx; and (4) that he was treated more harshly than other employees who were also accused of violating the discounted shipping policy.

*a. Temporal Proximity*

The district court determined that Savage had not shown that his military service or complaints about his retirement benefits entered into FedEx's decision to investigate his shipping activities, which were revealed by an automated audit process, and because FedEx had always accommodated his leave requests. On appeal, Savage argues that the time between his last complaint and last period of military service and his suspension is sufficient to raise a reasonable inference that the adverse action was motivated by his protected activity, especially in light of irregularities in the investigation process.

As an initial matter, the parties disagree as to the appropriate time frame to use in this analysis. The district court determined that Savage last raised complaints about his retirement benefits to FedEx in August 2012 (approximately 40 days before he was terminated on September 20) and he returned from military duty on August 10 (41 days before he was terminated). The court rejected FedEx's argument that Savage's deposition shows the period from complaint to the adverse action to be about four months.[1] Savage argues that temporal proximity should be measured to his suspension on September 12, rather than his termination, or approximately 33 days. We find that Savage has shown temporal proximity using either the shorter or longer period.

Establishing temporal proximity in a USERRA claim follows the same legal standards as in other retaliation cases. In some cases, temporal proximity alone may be sufficient. Where the adverse employment action "occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008). We have not considered any specific ceiling on the period of time that a court will consider sufficient to show temporal proximity. *See Bobo*, 665 F.3d at 756 (determining that two weeks between the plaintiff's protected activity and his discharge was, in addition to other evidence, sufficient to establish temporal proximity); *Hance*, 571 F.3d at 518 (finding that the "close temporal relationship" between the plaintiff's protected activity and discharge, 25 days, was sufficient to find a violation of USERRA together with other evidence of discriminatory motivation).

The district court relied on *Escher v. BWXT Y-12, LLC*, 627 F.3d 1020, 1026 (6th Cir. 2010), where 30 days between the last period of the plaintiff's military leave and his termination did not establish temporal proximity. *Escher*'s holding, however, did not specifically focus on or analyze the period of time. Rather, the analysis relied on undisputed facts that the relevant decision-maker "had no knowledge of [the employee's] military leave complaints," and that in

---

[1]FedEx also argues that Savage's last complaints were made to Mercer employees at the retirement benefits center, and so the inquiries cannot be attributed to FedEx. The district court found that this argument was "likely a jury question," and that the court "need not resolve the issue" for the purposes of summary judgment.

investigating the plaintiff for improper email use, the decision-maker was responding to an anonymous complaint about his email use. *Id.* at 1027.

The key inquiry in evaluating temporal proximity is whether the relationship between the protected activity and subsequent adverse action raises the inference of retaliation or discriminatory motivation. We have found that a time period of a month or more may establish temporal proximity. *See Dye v. Office of the Racing Comm'n*, 702 F.3d 286, 306 (6th Cir. 2012) (finding that "[a] lapse of two months . . . [wa]s sufficient to show a causal connection"); *Singfield v. Akron Metro. Housing Auth.*, 389 F.3d 555, 563 (6th Cir. 2004) (finding three months between protected activity and discharge "significant enough to constitute sufficient evidence of a causal connection").

FedEx argues that the conduct leading to Savage's termination occurred well before he contacted the retirement center, and that Savage's intervening complaint may not shield him from the consequences of earlier misconduct. *See Simpson v. Vanderbilt Univ.*, 359 F. App'x 562, 571 (6th Cir. 2009) (noting that the "conduct resulting in the [plaintiff's] termination occurred before the bulk of his complaints, and [the defendant] was already investigating that conduct"). But there is no indication that FedEx was already investigating Savage at the time he made his complaints. And the fact that Savage's improper conduct occurred long before, but he was only terminated after complaining to the retirement center, provides some support for his retaliation claim.

Based on the 33 days between Savage's protected activity and his suspension, and the 41 days between his activity and his termination, we find that temporal proximity raises an inference that the adverse action was motivated by Savage's protected activity.

### b. FedEx's Hostility to the Military

Savage argues that circumstantial evidence showing that FedEx is hostile to the military also supports his prima facie case of discrimination and retaliation under USERRA. The district court determined that Savage had not shown evidence of a hostile culture.

"[A]n employer's expressed hostility towards members protected by [USERRA] together with knowledge of the employee's military activity" can support a reasonable inference that the adverse action was motivated by discrimination or retaliation. *Hance*, 571 F.3d at 518. Savage asserts that the company's statements, policies, and practices reveal FedEx's hostility toward service members who exercised their rights under USERRA. Cunningham, another service member and FedEx aviation mechanic, stated that Savage and Cunningham's manager "issued a threat against [Cunningham] basically saying that [he] was doing too much military service and that [the manager] intended to remove [him]," (R. 99-8 at PageID 2461-62) and that the same manager "wrote [Savage] up for scheduling military service" during a busy time of year. (*Id.* at 2475-76) FedEx argues that the statements made to Cunningham do not apply to Savage, and that Savage's write-up was non-disciplinary in nature. But Savage does not offer these incidents as direct evidence of hostility or discrimination towards him, but rather as a reflection of the culture and environment at FedEx. *See Velazquez-Garcia v. Horizon Lines of Puerto Rico, Inc.*, 473 F.3d 11, 18-19 (1st Cir. 2007) (finding that "stray workplace remarks" by non-decisionmakers and to people other than the plaintiff "tend to add 'color' to the employer's decisionmaking processes and to the influences behind the actions taken with respect to the individual plaintiff"). Though not determinative, Cunningham's testimony is relevant to showing discriminatory animus.

Savage also argues that FedEx's previous policy of refusing to allow service member mechanics performing military service to bid on future work shifts, which reduced their earnings in violation of USERRA, is evidence of hostility to the military. At the time the policy was in place, Savage and Cunningham complained to FedEx. Cunningham filed a USERRA complaint with the Department of Labor, which found that the complaint was "meritorious" and that Cunningham was entitled to lost wages and accrued vacation. FedEx argues that a shift bid policy that was rectified in 2008 is irrelevant to Savage's current claim. Its relevance hinges on the fact that the policy was only changed after Savage and another mechanic complained to FedEx management and a meritorious DOL complaint was filed. This evidence raises an inference of a culture of hostility to the military at FedEx.

The same applies to FedEx's previous errors in making pension contributions for pilots who served in the military. FedEx argues that Savage had not shown how this dispute is relevant to his individual benefit concerns but, again, it is offered to show evidence of a hostile culture. FedEx acknowledged that it improperly calculated Savage's pension contributions for his military leave over his 11 years of employment—leave that occurred both before and after FedEx's dispute with the pilots' union.

FedEx responds with evidence that it accommodated Savage's military leave and training multiple times over his employment without issue, including allowing him to train at work and to use FedEx planes to go to military service. Though we find that this factor presents a close case, under our standard at this stage and taken in the light most favorable to Savage, the record is adequate to provide some support to Savage's prima facie case.

### c. Savage Was Targeted for His Leadership

Savage also argues that his long period of leadership within the mechanic group in raising USERRA-related issues made him a target for an adverse employment action, and is another factor that could lead a jury to infer that his termination was motivated by discrimination and retaliation. *See W.F. Bolin v. NLRB*, 70 F.3d 863, 871 (6th Cir. 1995) (holding that an "inference of improper employer motivation" is permitted when an employer has terminated an employee who acted as a leader in making complaints to management on behalf of himself or others, or has organized workers on employment issues).

FedEx responds that Savage was only disciplined after he admitted to repeatedly violating the reduced-rate shipping and acceptable conduct policies, and that the investigation into his actions began only after his name appeared on an automatically generated quarterly audit list. Though his name was generated from an "additional pull" of the top shippers, the record reflects that new list was made because many of the employees on the original list were already being investigated. Savage has not shown evidence raising an inference that he was singled out for investigation or termination due to his leadership on USERRA-related issues.

*d. Savage Was Punished More Harshly Than Others*

A plaintiff may also establish a prima facie case of discrimination or retaliation under USERRA by putting forward evidence of "disparate treatment of certain employees compared to other employees with similar work records or offenses." *Bobo*, 665 F.3d at 754. Savage argues that he was punished more harshly than other FedEx employees who violated the reduced-rate shipping policy. The district court determined that Savage could not provide any admissible evidence to show that Pablo Melgar, also an air mechanic at FedEx, had engaged in conduct comparable to Savage's violations.

On appeal, Savage refers to warning letters sent by FedEx to three employees accused of violating the discounted shipping policy in a similar time frame, none of whom were terminated. In a letter to Antoine Franklin, FedEx stated that it decided not to terminate him based on his "excellent work history," "the absence of any significant discipline history," and his "long tenure with FedEx." (R. 99-15 at PageID 2615) The record shows that Savage had a nearly spotless record at FedEx during his eleven years of employment, with perfect employment evaluations, numerous awards, and no formal discipline. Savage also points to similar letters to Melgar and Betty Parron, who were given warnings and suspensions for shipping packages on behalf of an unauthorized user for unauthorized or business purposes.[2] In these cases, the FedEx employees were punished for similar conduct—violating the discounted shipping and acceptable conduct policies. Though Lott and Turnipseed testified that they were not aware of an employee who had not been terminated for violation of the shipping policy, termination under the policy is discretionary. The differences between Savage's treatment and that of Franklin, Parron, and Melgar could raise an inference that FedEx was motivated to discharge Savage based on his protected activity.

---

[2]FedEx argues that the warning letters sent to Franklin, Parron, and Melgar are inadmissible evidence to show that they were similarly situated to Savage because they are "free standing," and unsupported by a declaration or deposition testimony to authenticate them. But as Savage notes, a document is deemed self-authenticated under Federal Rule of Evidence 902(7) when it is presented on company letterhead. *Alexander v. CareSource*, 576 F.3d 551, 561 (6th Cir. 2009). The letters offered by Savage are on FedEx letterhead, identify the dates sent and the individuals who wrote them, and FedEx produced them as part of discovery. Under these circumstances, the letters are admissible evidence.

FedEx argues that Savage cannot show that Franklin, Parron, or Melgar are adequate comparators because he cannot show that any of the three worked in the same position, had the same supervisor, or were in a non-protected class. But USERRA does not require a plaintiff to identify a similarly situated employee who was treated more favorably to establish a prima facie case, as under the *McDonnell Douglas* framework. The focus of our inquiry in a USERRA claim is whether the plaintiff and "his proposed comparators engaged in acts of comparable seriousness," and whether their different treatment gives rise to a reasonable inference of discriminatory motivation. *Bobo*, 665 F.3d at 751; *see also Escher*, 627 F.3d at 1029-30 (evaluating whether the plaintiff had met his burden of showing that "other employees' acts were of 'comparable seriousness' to his own infraction" by focusing on the employees' conduct and without raising whether these comparators were outside the plaintiff's protected class).

The relevant conduct in this instance was violation of the discounted shipping policy. The record shows that FedEx reinstated Franklin after initial termination and issued him a warning letter, though he had admitted to violating the reduced rate-shipping policy numerous times by shipping parcels for business purposes. The record also indicates that Franklin violated the policy by allowing an unauthorized user to ship packages. Savage was told that he violated the shipping policy numerous times, though he contends he was never informed how many shipments were improper. FedEx alleges that any violation is sufficient for discharge but states that Savage used his shipping discount 90 times between March and August 2012. Savage's wife, who was an authorized user, also used the discount. From the information available in the record, Franklin's conduct is of comparable seriousness. Viewing this evidence in the light most favorable to Savage, the disparity in FedEx's treatment of Savage and Franklin provides some support for his prima facie case.

The evidence presented is close on whether Savage has met his initial burden to show by a preponderance that his protected status was a motivating factor in the adverse action taken against him, but we find that he has offered sufficient circumstantial evidence to draw an inference that satisfies his burden at the prima facie stage. We turn to the second step of a USERRA claim.

2. Employer's Valid Reason for the Adverse Action

For the last step, the burden now shifts to FedEx to establish, by a preponderance of the evidence, that it would have terminated Savage "in the absence of" his military service or complaints. 38 U.S.C. § 4311(c); *Hance*, 571 F.3d at 518. USERRA specifies that the employer must prove that any adverse action taken would have occurred even without the employee's protected activity, regardless of the permissible disciplinary options available to the employer. 38 U.S.C. § 4311(c); *cf. Petty*, 538 F.3d at 437 (noting that "the fact that [the defendant] had a legitimate reason" for adverse action against the plaintiff did not "prove that the [action] did not also have an improper motivation").

Savage argues that the central issue here is not whether FedEx *could* have terminated Savage, but rather that the circumstantial evidence supporting his prima facie case creates a genuine dispute of material fact as to whether FedEx *would have* terminated him in the absence of a discriminatory motive. Savage maintains that FedEx has not provided proof that his violation of the shipping policy alone would have resulted in discharge, and thus has not met its burden of establishing, by a preponderance of the evidence, that the termination would have occurred.

The circumstantial evidence that Savage has presented to establish his prima facie case, however, does not cast doubt on the actual investigation into his violations. The investigation was initiated because Savage's name appeared on an auto-generated list of high volume shippers. Because of this high volume of shipments, Savage was investigated and interviewed by a security specialist who testified that she had no prior knowledge of his military service. The security specialist determined that Savage had repeatedly violated the shipping policy. There is no indication in the record that Patton, the managing director who made the termination decision, had knowledge of either Savage's service or complaints. Savage's human resources advisor, Lott, did have familiarity with his service, as well as Savage's complaints about his pension benefit calculations. But the evidence presented in Savage's prima facie case does not suggest a discriminatory motive on the part of Lott or another individual at FedEx. The record shows that FedEx's initial investigation began because Savage's name appeared as part of a computer-generated audit, within a system that functions automatically. Lott was not involved in the

decision to investigate Savage, nor in the decision to terminate him.  Lott passed on the results of Williams's investigation, which recommended termination, to Patton, who followed this recommendation.  Lott also testified that all employees that he knew to have violated the discounted shipping policy were terminated for their violations.  The evidence shows that FedEx's "legitimate reasons [for terminating Savage], standing alone, would have induced [FedEx] to take the same adverse action" against him.  *Hance*, 571 F.3d at 518 (quoting *Sheehan v. Dep't of Navy*, 240 F.3d 1009, 1014 (Fed. Cir. 2001).  We conclude that FedEx has carried its burden to show that it would have terminated Savage in the absence of discrimination or retaliation, and affirm the district court's grant of summary judgment to FedEx on these claims.

**B.  USERRA Pension Denial Claim**

Savage also argues that FedEx failed to properly calculate retirement benefits to which he was entitled while on military leave.  Section 4318 of USERRA requires employers to make pension contributions to employees serving in the military to ensure they receive the same benefits as if they had been continuously employed.  *See* 38 U.S.C. § 4318(a)(2).  When the rate of contribution is "not reasonably certain," such as for employees who earn overtime pay or commissions, USERRA establishes a 12-month look-back rule to estimate "the employee's compensation during the period of service" to determine the appropriate amount of pension contribution.  *Id.* § 4318(b).  The rule requires that the employer calculate compensation during a period of military leave based on the "employee's average rate of compensation during the 12-month period immediately preceding" military service.  *Id.* § 4318(b)(3).

The district court determined that Savage had failed to explain the basis for his alternate calculations of the appropriate amount of pension contributions, and why his calculations complied with USERRA but FedEx's did not.  On appeal, Savage argues that FedEx did not use the correct formula under USERRA's 12-month look-back rule because FedEx's calculations relied on hours that FedEx estimated Savage would have worked during periods of his military leave, rather than the number of hours he actually worked during the 12 month look-back period preceding each military service.

As an initial matter, FedEx argues that Savage presents a new theory on appeal that was not raised before the district court and is therefore waived. *See Estate of Quirk v. C.I.R.*, 928 F.2d 751, 757-58 (6th Cir. 1991). The district court only analyzed evidence of Savage's own calculations, not FedEx's methodology. Savage's argument on this claim is purely legal, and we have exercised discretion to decide "purely legal question[s]" even when not raised below. *United States v. Chesney*, 86 F.3d 564, 568 (1996). Moreover, in *Ralph Shrader, Inc. v. Diamond International Corp.*, 833 F.2d 1210, 1213-14 (6th Cir. 1987), we "exercised [our] discretion to hear [an] issue on appeal which was not raised below because the issue involved the same 'statutory scheme.'" *Quirk*, 928 F.2d at 758. We determined that because "[n]o new statutory schemes were raised on appeal," the issue presented was the same as that presented to the district court: "the interpretation of the parties' form and the application of [the statute]." *Ralph Shrader*, 833 F.3d at 1214. Savage raised whether FedEx properly followed § 4318 before the district court, and his current claim requires this court to examine "the interpretation . . . and application" of USERRA. Savage is not barred from raising this on appeal.

Savage argues that FedEx did not properly follow USERRA's 12-month look-back rule. FedEx used two steps to calculate his pension benefit contributions: (1) estimating Savage's hourly "rate of pay" from the 12-month look-back period; and (2) estimating his imputed earnings by multiplying this rate of pay by the number of hours FedEx estimated Savage would have worked each day he was on military leave. Savage states that FedEx should have calculated his earnings (his compensation) for pension purposes using only the average of all of his earnings from the 12 months before each period of military service. He argues that FedEx's method erred with its second step because the calculation expressly relies on hours that FedEx estimated Savage would have worked during his current military leave. USERRA, he notes, "imposes a straight-forward rule" that requires FedEx to make contributions based on Savage's "average rate of compensation during the 12-month period immediately preceding" his military service and compensation includes both rate of pay and hours worked. 38 U.S.C. § 4318. The dissent suggests that Savage seeks to have FedEx complete an additional step in its rate-of-compensation calculation. But the record reflects that Savage would have FedEx calculate his imputed earnings using only one step: the average of his overall *compensation* for the twelve-month period prior to each period of leave for military service.

By basing part of the calculation on its estimate of the hours Savage would have worked during his periods of military leave, FedEx's calculations may be inconsistent with the terms of USERRA. As Savage notes, it would be permissible to apply rates and hours during a period of military leave only if those rates or hours were known and fixed for the period of leave. The record is clear that Savage's hours were not fixed, but varied week to week, and that he frequently worked overtime. FedEx did not dispute that Savage's hours were not reasonably certain and therefore employed a 12-month look-back method. Allowing FedEx to calculate his earnings based on its estimate of his hours worked during a current leave is thus at odds with the look-back rule in § 4318. Based on the text of § 4318, it appears that FedEx should have calculated Savage's pension benefit contributions based on an average rate of compensation (including *both* pay rate and hours) during the 12 months prior to each period Savage was on a military leave of absence.

While we have not previously interpreted the 12-month look-back rule provided for in § 4318, we find support for Savage's position in other cases that have examined the statute. *See Hanson v. Cty. of Kitsap*, 21 F. Supp. 3d 1124, 1148 (W.D. Wash. 2014) (granting summary judgment to the plaintiff on his USERRA pension claim where his compensation was not reasonably certain and he offered unchallenged evidence of his "earnings for the 12 month period before his deployment" to calculate the appropriate amount of pension contributions instead of the defendant's estimation "based on the number of hours his position was approved to work"); *Arocho v. Cent. States, Se. & Sw. Areas Pension Fund*, No. 6:07-cv-01886-Orl-19KRS, 2007 WL 2936216, at *7 (M.D. Fla. Oct. 9, 2007), *aff'd per curiam*, 276 F. App'x 963 (11th Cir. 2008) (discussing the defendant's potential liability under the statute, and finding that such liability would be calculated using the plaintiff's rate of compensation for a "period of employment immediately before he began military service"); *see also* 20 C.F.R. § 1002.267 (interpreting § 4318 to state that "[w]here the rate of pay the employee would have received is not reasonably certain . . . the average rate of *compensation* during the 12-month period prior to the end of uniformed service must be used") (emphasis added).

FedEx did not respond to Savage's interpretation of the 12-month look-back rule. Because we find that Savage has provided evidence to show that there is a genuine dispute of

material fact as to whether FedEx correctly calculated his pension contributions under § 4318, we reverse the district court's grant of summary judgment on this claim, and remand for further proceedings.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** in part and **REVERSE** in part the district court's grant of summary judgment to the defendants.

---

**CONCURRING IN PART AND DISSENTING IN PART**

---

BATCHELDER, Circuit Judge, concurring in part and dissenting in part. I concur with the majority's opinion regarding Savage's discrimination and retaliation claims under USERRA. While Savage may have satisfied his burden to present a prima facie case of discrimination or retaliation, FedEx has ably demonstrated that it would have terminated Savage "in the absence of" his military service or complaints.

I respectfully dissent from the majority's resolution of Savage's USERRA pension denial claim. I agree that the court may consider Savage's claim, but I would hold that Savage has failed to demonstrate that FedEx's method of calculating his "average rate of compensation," in order to determine the appropriate amount that FedEx should contribute to his pension, violates 38 U.S.C. § 4318.

When computing an employer's liability for pension benefits under § 4318, if the employee's "rate [of compensation] is not reasonably certain," an employer should make such computation "on the basis of the employee's average rate of compensation during the 12-month period immediately preceding" the period of service. § 4318(b)(3)(B); *see also* 20 C.F.R. § 1002.267(b)(1). Although the meaning of the phrase "average rate of compensation" appears to be clear and straight-forward, the majority believes that "FedEx's calculations may be inconsistent" with the statute's requirements. As Savage's arguments demonstrate, FedEx might have calculated his pension benefits in a way that provided a larger gain to Savage. However, simply because Savage, and the majority, can imagine a way to increase Savage's pension benefits does not mean that FedEx violated § 4318 by failing to employ such a method.

The parties do not dispute that Savage's rate of compensation "is not reasonably certain," because Savage was, at times, entitled to shift differential pay, overtime pay, and premium license pay during his tenure at FedEx.[1] Instead, Savage criticizes FedEx for relying on his

---

[1]Although, as FedEx creates advance schedules for its employees, it may very well be possible to determine to a reasonable degree of certainty Savage's rate of pay for his military service leave. To the extent that

scheduled work hours in their rate-of-compensation calculation, arguing that he often worked <u>more</u> than his scheduled hours. Because he frequently picked up extra shifts or worked overtime hours, Savage argues that FedEx's pension payment calculation should account for overtime hours he might have worked "but for" his military service leave. Savage therefore asserts that FedEx should have completed an additional step, determining Savage's average work hours, before multiplying Savage's average rate of pay by his average work hours. Savage, however, fails to prove that the statute requires this extra step.

Contrary to Savage's assertion, the language of the statute does not require FedEx to assume that Savage would have worked unscheduled shifts or overtime and then to calculate the average number of unscheduled hours that Savage might have worked but for his military service leave. *Cf. Arocho v. Cent. States, Se. & Sw. Areas Pension Fund*, No. 6:07-cv-01886, 2007 WL 2936216, at *7 (M.D. Fla. Oct. 9, 2007) (explaining that § 4318 does not require an employer to assume that a part-time employee would have become a full-time employee <u>during</u> his period of military service), *aff'd per curiam*, 276 F. App'x 963 (11th Cir. 2008).[2]

FedEx engaged in a sensible, and statutorily permissible, method of calculating Savage's average rate of compensation. As described in the majority's opinion, FedEx determined Savage's rate of compensation by computing his average pay per hour (which included differential pay, overtime pay, and other increases to his rate of pay) for fifty-five separate leave periods. FedEx then multiplied that rate by the number of hours that Savage was on military service leave. As discussed at oral argument, FedEx determined the number of leave hours by relying on work schedules that were created in advance of Savage's military service leave.

FedEx could anticipate that Savage would be on military service leave for shifts where he was scheduled to receive differential pay or overtime pay, Savage's rate of pay would not be uncertain and FedEx may not need to employ a 12-month lookback to determine Savage's average rate of compensation.

[2]The majority cites *Arocho* for the proposition that § 4318 requires a determination of liability based on the plaintiff's "period of employment immediately before he began military service." However, *Arocho* does not discuss a rate-of-compensation calculation, but whether Arocho, as a part-time employee when he began military service, would have been eligible for pension contributions. The *Arocho* court explained that an employer making pension contributions should not be expected to speculate regarding hours the employee might have worked absent military service. Instead, the district court explained, the employer was entitled to make its pension determinations based on the employee's status when military service began. *Arocho*, 2007 WL 2936216, at *7. The majority also cites *Hanson v. County of Kitsap*, 21 F. Supp. 3d 1124, 1148 (W.D. Wash. 2014), in support of Savage's position. *Hanson*, however, merely discusses when compensation is not "reasonably certain," and Hanson's employer did not provide evidence challenging Hanson's pension contribution calculations. *Id.*

Contrary to the majority's belief that "Savage's hours were not fixed," Savage's hours were fixed, to a certain degree, because FedEx created advance schedules for its employees. Had Savage not been away on military service leave, he would have been required to work the hours for which he was scheduled. It is Savage's self-selected overtime hours and extra shifts that varied from week to week, and it is unclear from the record how many unscheduled shifts or overtime hours Savage would have worked but for his military service. Therefore, FedEx did not violate the statute by refusing to speculate regarding the number of unscheduled hours Savage might have worked but for his military service.

Savage has certainly highlighted the ways that he believes FedEx might have improved its calculation of his pension benefits. However, simply because FedEx might have used a method of calculation more favorable to Savage, does not mean that it failed to comply with USERRA. For this reason, I dissent.