NOT RECOMMENDED FOR PUBLICATION
File Name: 17a0663n.06

No. 16-2222

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

NORTHERN INSURANCE COMPANY OF NEW YORK, )
)
)
     Plaintiff-Appellee, )
)
v. )
)
TARGET CORPORATION; TARGET STORES, )
)
     Defendants-Appellants. )
)

**FILED**
Nov 29, 2017
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

BEFORE: **KEITH, BATCHELDER, and SUTTON, Circuit Judges.**

**ALICE M. BATCHELDER, Circuit Judge**. Appellants Target Corporation and Target Stores (collectively, "Target") have an indemnification agreement with Home Niches, Inc. ("Home Niches"). Walsay, Inc. ("Walsay")[1] assumed Home Niches's indemnification obligation under that agreement. The present insurance-coverage dispute arises from this arrangement. The sole question on appeal is whether that arrangement is an "insured contract," as defined by the pertinent insurance policy between Walsay and Appellee Northern Insurance Company of New York ("Northern Insurance"). The district court found that the arrangement was not an insured contract, granted Northern Insurance's motion for summary judgment in its declaratory judgment action against Target, and denied Target's cross-motion for partial summary judgment. Finding no error, we affirm.

---

[1] The parties stipulated to dismissal with prejudice of Home Niches and Walsay on December 3, 2015.

## I.

The relevant facts are undisputed, and the relationships between the various entities were ably mapped by the district court in its summary judgment opinion. We repeat here only the necessary facts.

## A.

Home Niches is a household-products distributor that supplied products to Target pursuant to a 2004 "Partners Online Agreement." In part, the Partners Online Agreement provides that Home Niches would indemnify and defend Target for liabilities arising from products manufactured or supplied by Home Niches. Specifically, the Partners Online Agreement states:

> Vendor [Home Niches] shall defend, indemnify and hold harmless Purchaser [Target], its parent, affiliates, agents and employees, from and against any and all liability, claims, suits, actions, losses and expenses . . . relating to or arising out of any claim or demand of any kind or nature, which any buyer . . . may make against [Target], based upon or arising out of the manufacture, delivery, ticketing, labeling, packaging, placement, promotion, sale or use of the Goods [delivered to Target].

In 2010, Home Niches began to wind down its dealings with Target. On March 11, 2011, Walsay and Home Niches executed an "Assumption Agreement" in which Walsay assumed Home Niches's indemnification obligation to Target. The Assumption Agreement provides:

> Vendor [Home Niches] and Assignee [Walsay] acknowledge and agree that:
>
> (1) [Home Niches] hereby assigns to [Walsay] all of its right, title and interest in and to its account with Target.
> (2) [Walsay] will assume and be directly liable to Target with respect to all claims, liabilities, and other amounts owed by [Home Niches] to Target as of the date of the assignment or arising from transactions between [Home Niches] and Target prior to the date of the assignment ("Existing Liabilities").
> (3) In the event [Walsay] fails to pay the Existing Liabilities, [Home Niches] will pay such amounts directly to Target.

(4) [Walsay] will be solely responsible with respect to all claims, liabilities, and other amounts owed by [Walsay] to Target that are incurred following the date of assignment.

(5) As part of the above assignment, [Home Niches] is transferring to [Walsay] its Partners Online registration. As such, [Walsay] agrees that it is subject to the terms and conditions relating to such registration, including the agreement that all business conducted by [Walsay] with Target is in accordance with the terms, conditions and other provisions set forth in Partners Online including, without limitation, the Conditions of Contract.

At all times relevant to this case, Walsay was insured by Northern Insurance. The Northern Insurance policy provided coverage for certain bodily injury damages. The policy states:

> We [Northern Insurance] will pay those sums that the insured [Walsay] becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend [Walsay] against any "suit" seeking those damages. However, we will have no duty to defend [Walsay] against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

Certain obligations are excluded from coverage, although the policy provides limited exceptions to those exclusions. As relevant here, Northern Insurance's policy does not apply to "'[b]odily injury' or 'property damage' for which [Walsay] is obligated to pay damages by reason of the assumption of liability in a contract or agreement." This exclusion, however, does not apply to liability for damages: "(1) That [Walsay] would have in the absence of the contract or agreement; or (2) [a]ssumed in a contract or agreement that is an 'insured contract' provided the 'bodily injury' or 'property damage' occurs subsequent to the execution of the contract or agreement." The term "insured contract" means:

> That part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

In sum, the Northern Insurance policy covered tort liability that Walsay assumed by agreement. However, if Walsay does not assume *tort liability* under an agreement, then a claim for bodily injury damages is excluded from coverage.

**B.**

In 2012, a child suffered an injury while using a product that was supplied by Home Niches and purchased at Target. The child's mother, Angela Neal, filed a products liability action against Target, Home Niches, and Walsay, and Target asserted cross-claims seeking indemnification. Target ultimately settled with Neal, and the United States District Court for the Northern District of Illinois found that Home Niches and Walsay had breached their indemnification obligation to Target. *Neal v. Target Corp.*, No. 13-cv-5907, 2015 WL 4021050, at *5–6 (N.D. Ill. July 1, 2015). Target then sought coverage for those amounts under Walsay's policy with Northern Insurance.

**C.**

Northern Insurance filed the instant declaratory judgment action against Target in the United States District Court for the Eastern District of Michigan, seeking to determine the availability and scope of insurance coverage under the policy issued to Walsay. Northern Insurance sought summary judgment, arguing that neither the Partners Online Agreement nor the Assumption Agreement was an insured contract and that Target's claim was excluded from coverage. Target filed a cross-motion for partial summary judgment, arguing that Walsay's indemnity obligation to Target is an insured contract under the Northern Insurance policy. The district court granted Northern Insurance's motion for summary judgment and denied Target's cross-motion. The district court explained that neither the Partners Online Agreement nor the Assumption Agreement was an insured contract and that the two agreements could not be

combined to create an insured contract that satisfied the exception to exclusion from coverage. Target timely appealed that decision.[2]

## II.

"We review a district court's grant of summary judgment de novo and consider the facts and any inferences drawn in the light most favorable to the non-moving party." *Savage v. Fed. Express Corp.*, 856 F.3d 440, 446 (6th Cir. 2017) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Summary judgment is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

This court has diversity jurisdiction over this insurance-coverage dispute, and the parties agree that Michigan law governs the matter. Under Michigan law, "insurance policies are subject to the same contract construction principles that apply to any other species of contract," and "unless a contract provision violates law or one of the traditional defenses to the enforceability of a contract applies, a court must construe and apply unambiguous contract provisions as written." *Rory v. Cont'l Ins. Co.*, 703 N.W.2d 23, 26 (Mich. 2005). "It is the insured's burden to establish that his claim falls within the terms of the policy," but "the insurer should bear the burden of proving an absence of coverage." *Hunt v. Drielick*, 852 N.W.2d 562, 565 (Mich. 2014) (internal alterations and citations omitted). "Exclusionary clauses in insurance policies are strictly construed in favor of the insured." *Id.* (quoting *Auto-Owners Ins. Co. v. Churchman*, 489 N.W.2d 431, 434 (Mich. 1992)) (internal alternations omitted). "However, 'it

---

[2] Target's notice of appeal also identified the district court's order denying Target's earlier motion for partial summary judgment. That motion was denied without prejudice, and Target reasserted its arguments in the later motion for summary judgment. Target does not raise any arguments regarding that order on appeal, and has therefore abandoned the issue. "An appellant abandons issues not raised and argued in his initial brief on appeal." *Hih v. Lynch*, 812 F.3d 551, 556 (6th Cir. 2016) (citing *United States v. Johnson*, 440 F.3d 832, 845–46 (6th Cir. 2006)).

is impossible to hold an insurance company liable for a risk it did not assume,' and, thus, 'clear and specific exclusions must be enforced.'" *Id.* at 566 (internal alterations and citations omitted).

**III.**

Target has conceded that, absent an exception, its claim is excluded from coverage under the Northern Insurance policy. Accordingly, the only issue on appeal is whether the insured-contract exception to exclusion applies. Target asserts that the Assumption Agreement between Home Niches and Walsay is an insured contract because the damages in this case are tort damages and Target is "another party," as referenced in the insured-contract definition. Further, even if the Assumption Agreement is not an insured contract, Target argues, the Partners Online Agreement and the Assumption Agreement, read together, comprise an insured contract because they "assume the tort liability of another party." Target's arguments are unavailing.

First, Target incorrectly focuses on the nature of the damages in the underlying suit rather than the nature of the *liability* at issue. To be an insured contract, an agreement must "assume the tort liability of another party," and tort liability is liability "that would be imposed by law in the absence of any contract or agreement." Even though Target was subject to tort liability, Walsay and Home Niches were not. As the district court explains, Home Niches is not liable to Target or to Angela Neal in tort. Instead, Home Niches is liable to Target solely because of the indemnification provision in the Partners Online Agreement. *See Neal*, 2015 WL 4021050, at *4 ("According to Target, this [Partners Online Agreement indemnification] provision is dispositive on the question of who is required to defend against plaintiff's claims and on the question of who will be required to pay any judgment entered in plaintiff's favor on those claims."). Because Home Niches's obligation to Target is based on the Partners Online Agreement, Walsay assumed

Home Niches's *contractual* liability in the Assumption Agreement. *See Colony Nat'l Ins. Co. v. Manitex, L.L.C.*, 461 F. App'x 401, 404–05 (5th Cir. 2012) (reviewing an identical insured-contract definition under Texas law and finding that, because Manitex assumed Powerscreen's liability, and "Powerscreen's liability arose strictly from a contract," Manitex's liability "was not 'tort liability'"); *Dale Osburn, Inc. v. Auto Owners Ins. Co.*, No. 242313, 2003 WL 22718194, at *5 (Mich. Ct. App. Nov. 18, 2003) ("[B]ecause Edison's liability to MFC arises from a reciprocal indemnity provision in the Sibley Quarry Agreement, Edison's liability to MFC is liability imposed by contractual agreement."). Therefore, because Home Niches was not liable to Target in tort, Walsay did not assume tort liability in the Assumption Agreement.

Second, Target is not "another party" as referenced by the insured-contract definition. The Northern Insurance policy does not define the term "party." "Where a term is not defined in the policy, it is accorded its commonly understood meaning." *City of Grosse Pointe Park v. Mich. Mun. Liab. & Prop. Pool*, 702 N.W.2d 106, 113 (Mich. 2005) (citing *Allstate Ins. Co. v. McCarn*, 645 N.W.2d 20, 22 (Mich. 2002)). In the legal sense, "party" is commonly understood to mean "[a] person or entity that participates in a transaction, [or] makes a contract." *American Heritage Dictionary* 1286 (5th ed. 2011); *see also Black's Law Dictionary* 1297 (10th ed. 2014) (defining "party" as "[s]omeone who takes part in a transaction <a party to the contract>"). Target is not a party to the operative agreement here, which is the Assumption Agreement between Walsay and Home Niches. The policy language requiring that an insured contract "assume the tort liability of another party" is clear. Even if, as Target argues, it is a beneficiary to the agreement or was required to consent to the assignment of obligations, such circumstances do not make Target a "party" to the Assumption Agreement, and Target has cited no support for that proposition.

The policy language also indicates that "another party" should be understood to mean another party to the contract. The insured-contract definition distinguishes "you" (the insured), "another party," and a "third person." "Another party" and "third person" are used to refer to different entities or persons. However, under Target's interpretation, the two terms collapse to mean the same thing: a non-party. The Ninth Circuit has rejected a similar legal argument, determining that "[t]he 'insured contract' exception applies if the insured has assumed *a contracting party's* tort liability against a third party. . . . If [plaintiff's] interpretation was credited, the exception would swallow the contractual liability exclusion, and transform all routine indemnification agreements into insurance contracts." *APL Co. Pte. v. Valley Forge Ins. Co.*, 541 F. App'x 770, 772–73 (9th Cir. 2013) (emphasis added) (citing *Golden Eagle Ins. Co. v. Ins. Co. of the W.*, 99 Cal. App. 4th 837, 847 (Cal. Ct. App. 2002)). The term "another party," therefore, means another party to the purported insured contract. Target is not a party to the Assumption Agreement and, because Target is the only entity with tort liability, the Assumption Agreement is not an insured contract.

Finally, the Assumption Agreement and the Partners Online Agreement may not be read together to create an insured contract. As detailed above, an insured contract is "[t]hat part of any other contract or agreement" under which Walsay "assume[d] the tort liability of another party." This language indicates that an insured contract is a *singular* agreement that *directly* assumes the tort liability of another party. Target has cited no authority, and we have found none, directing otherwise. In the present case, Walsay entered into one contract with Home Niches (the Assumption Agreement) to assume Home Niches's liability under a *second* contract (the Partners Online Agreement). Walsay did not directly assume Target's tort liability, but instead, assumed *Home Niches's* indemnification obligation to Target.

Nonetheless, Target argues that the resolution of liability in the underlying case in the Northern District of Illinois also resolves the present dispute because that court found that Walsay assumed Target's tort liability. Target's shorthand reference to the two-contract arrangement detailed above is misleading. Simply because the district court in the underlying case found that Walsay and Home Niches were contractually responsible for indemnifying Target's tort liability does not mean that it found that Walsay *assumed* Target's tort liability. Moreover, in considering Neal's and Target's later motions to enforce the settlement agreement in the underlying case, the district court determined that "both Target and Northern left to another day whether and in what respect Target can recover from Northern[] in the Michigan Coverage Action." *Neal v. Target Corp.*, No. 13-cv-5907, 2016 WL 3365432, at *6 (N.D. Ill. June 15, 2016). The district court in the underlying case, therefore, did not address the issue presented here and its resolution of liability does not affect the instant insurance-coverage dispute.

## IV.

Accordingly, the district court correctly determined that the insured-contract exception to exclusion from coverage did not apply in this matter. The district court properly granted Northern Insurance's motion for summary judgment and denied Target's cross-motion for partial summary judgment. We affirm.